355 So.2d 554 (1978)
Robert DUPRE, Plaintiff and Appellant,
v.
TRI-PARISH FLYING SERVICE, INC., Defendant and Appellee.
No. 6261.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1978.
John Saunders, Ville Platte, and Donald Soileau, Mamou, for plaintiff and appellant.
Fusilier, Pucheu & Soileau, L. O. Fusilier, Ville Platte, for defendant and appellee.
Before CULPEPPER, DOMENGEAUX and WATSON, JJ.
CULPEPPER, Judge.
This is a companion case to Tri-Parish Flying Service, Inc. v. Dupre, 355 So.2d *555 558, in which a separate decision is being rendered by us this date. In the present case, Robert Dupre, a rice farmer, sues Tri-Parish Flying Service, Inc. for damages to the engine of his irrigation well and loss of part of his rice crop allegedly caused by defendant's failure to repair the engine in a good and workmanlike manner. In the companion case, Tri-Parish sues Dupre for the balance due on an open account which includes $1,023.53 for the overhaul of the engine. In the present case, the trial judge rejected Dupre's demand for damages on the basis that he assumed the risk of damage to the engine by continuing to run it, knowing that it was using oil excessively. In the companion suit, the trial judge awarded Tri-Parish the balance due on the open account, subject to a credit of $1,023.53, representing the cost of repairs to the engine. Mr. Dupre, the plaintiff, appealed only the present case. He did not appeal in the companion case.
The substantial issue is whether Mr. Dupre assumed the risk of damage to his engine.
The facts are that in November of 1974 Dupre purchased a tract of rice land and the irrigation well thereon. In January of 1975, he called Tri-Parish to examine the engine and fix it in running condition for irrigation of the spring rice crop. The mechanics from Tri-Parish advised Dupre that the engine was smoking excessively and needed an overhaul. In February of 1975, Dupre contracted with Tri-Parish to overhaul the engine. Pursuant to this agreement, Tri-Parish replaced the piston rings and certain other parts, which they said would put the engine in good running condition.
In early March of 1975, Dupre ran the engine for the first time after the overhaul. It used about three gallons of oil per day. He realized this was excessive, so he immediately notified Tri-Parish, who advised him that this excessive use of oil would probably cease after several days of use required for the new rings to properly seal. Plaintiff accepted this advice and continued to run the engine and to check the oil closely. The engine continued to use about three gallons of oil per day. The testimony indicates that two or three quarts per day would be normal. The engine holds six gallons of oil.
The condition persisted, and Dupre made numerous complaints. Finally, Tri-Parish agreed that as soon as the pumping season ended, normally about 90 days, they would take the engine back to their shop and check it out and replace the rings if necessary. During May of 1975, the engine became overheated and threw a rod which broke the block. It is a total loss.
In his written reasons, the trial judge discussed the conflicting testimony by experts as to exactly what caused the engine to overheat and throw a rod. The court concluded:
"Much testimony revolved over the exact cause of the damage to the engine. Some experts testified to the effect that the oil was simply allowed to run too low, another expert says that even if it were three gallons low, it could still perform because it has a six gallon capacity. Other witnesses testified that it was not a lack of oil, but rather a connecting arm that came loose and caused the damage. Further testimony involved the nuts holding the connecting rods as being too loose, or too tight, and causing the connecting rod to come loose and being shoved through the engine. With reference to these lock nuts or bolts, testimony also reveals that extreme heat such as could be caused by lack of adequate oil in the engine could cause these lock nuts to loosen, and that probably this is what happened in this particular case.
"This Court is of the opinion that quite possibly the rings placed in the engine were defective. The Court is further of the opinion therefore that while this may not necessarily be the fault of Tri-Parish Flying Service, yet it warrants the parts which it uses in repair work. Therefore credit should be given to Dupre for the amount of the cost of those repairs, that is, the amount of $1,023.53. Otherwise, Tri-Parish should have judgment as prayed for in its suit Number 30,483, subject to a credit of $1,023.53.

*556 "Plaintiff, Dupre's claim for damages should be denied. The record will reveal that Mr. Dupre is an educated man, knowledgeable in these matters, and that by running this engine knowing full well that it was consuming three to four gallons of oil a day, quite excessively, that he assumed a calculated risk that this procedure could be and indeed was detrimental to the engine and that therefore his claim for damages should be denied."
As to Mr. Dupre's knowledge of engines, the evidence shows that he graduated from college with a BS Degree in Chemistry and Physics. He had worked during his high school years as a mechanic's helper for his father's International Harvester dealership. As a farmer, he had worked on the engines of automobiles, mowing machines, etc. Thus, the evidence does show that Mr. Dupre had a better than average knowledge of combustion engines.
Since this is an action for breach of contract, rather than a tort action, the narrow defense of assumption of the risk, is not applicable. In Stone, Tort Doctrine, La.Civ.L.Treatise, Vol. 12, Sec. 294, the author explains the rationale of this defense is that the plaintiff, with actual knowledge of the risk, voluntarily chooses to assume the risk, thus relieving the defendant of the duty to protect against the injury. An essential requirement of assumption of the risk is actual knowledge of the risk, which is a subjective test. This differs from contributory negligence where actual knowledge of the risk is not required, the test being that of the reasonable man, an objective test. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971).
This brief analysis of the doctrine of assumption of the risk indicates it should have no application in actions for breach of contract. In tort actions, where assumption of the risk is a defense, the plaintiff with actual knowledge of the risk voluntarily chooses to expose himself to the harmful actions of the defendant, thereby relieving the defendant of the duty to protect against injury. To apply such a rationale to actions for breach of contract would mean that if plaintiff has actual knowledge of a risk that defendant will breach the contract, and plaintiff does not protect himself against damage by such breach, he thereby relieves defendant of any liability for breach of the agreement. This is not logical.
The applicable rule in the present case is the duty of the injured party to mitigate damages after the wrongful action has occurred. This rule is also referred to as the doctrine of "avoidable consequences". It can be applied in both actions in tort and actions for breach of contract.
The doctrine of mitigation of damages has been applied many times by the appellate courts of Louisiana. In Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968), a suit for breach of a contract to build a swimming pool, our Supreme Court stated:
"Perhaps the best exposition of the principle, insofar as it is pertinent to the instant matter, appears in 22 American Jurisprudence, 2d, pages 53, 61 and 282, verbo `Damages' (Sections 32, 37 and 203). Therein it is stated: `Section 32. Under the doctrine of avoidable consequences, the injured person need not make extraordinary efforts or do what is unreasonable or impracticable in his efforts to minimize damages; reasonable diligence and ordinary care are all that is required to allow full recovery of all damages caused by the defendant's wrongful activity. More completely stated, the consequences of an injury are recoverable where the injured party acts with such care and diligence as a man of ordinary prudence would under the circumstances, and his efforts to minimize damages are determined by the rules of common sense, good faith, and fair dealing.'"
In Meaux v. Hoffpauir, La.App., 219 So.2d 551 (3rd Cir. 1969), a case somewhat similar to the present, plaintiff sued defendant for breach of a contract to furnish water for the irrigation of rice. The defendant contended plaintiff should have minimized his crop damage by securing water from other sources. One of the factors *557 considered by the court in finding that plaintiff had not breached his duty to minimize damage was that defendant had repeatedly assured plaintiff that the water would be forthcoming.
Particularly applicable to the present case is the summary and comment from 66 ALR 3rd 1162, at page 1164:
"According to the doctrine of avoidable consequences, it is said that a party cannot recover damages flowing from consequences which that party reasonably could have avoided. However, the authorities hold that an injured person may recover to the full extent of his injury where he shows reasonable grounds for his failure to make an effort to lessen his damages. Thus, for example, it is said that the repeated assurances of the defendant after an injury has begun that he will remedy the condition is sufficient justification for the plaintiff's failure to take steps to minimize loss, so long, at least, as there is ground for expecting that he will perform."
Applying these rules to the present case, we conclude first that the evidence amply supports the finding of fact by the trial judge that defendant breached its contract to overhaul the engine in a good and workmanlike manner. However, we disagree with the trial judge's finding that the plaintiff assumed the risk of damage to the engine by continuing to run it, knowing that it was using oil excessively. Although plaintiff had better than average knowledge about combustion engines, and he knew the engine was using too much oil, he immediately notified defendant of this defect. Defendant assured plaintiff the reason for the excessive use of oil was probably that the new rings had not properly sealed. Defendant advised plaintiff to continue to use the engine and the condition would probably correct itself. The engine continued to use oil excessively, and plaintiff continued to complain to defendant, and defendant continued to reassure plaintiff that he could run the engine safely until the end of the pumping season and then they would bring the engine to their shop and replace the rings if necessary.
We conclude plaintiff used ordinary reasonable care under the circumstances, particularly in view of the repeated assurances by defendant that it was safe to continue to use the engine. Plaintiff did not breach any duty he had to minimize damages. Therefore, plaintiff is entitled to recover the damages he suffered by reason of defendant's failure to properly overhaul the engine.
The evidence shows that a new engine of this type would cost about $6,500. There is evidence that in its used condition, before the repairs by defendant, it was worth about $2,750. After the repairs, the engine had a value of about $3,500. Defendant's employee, Winston Soileau, testified that it would cost about $4,000 to repair the damages caused to the engine by the overheating. This would be more than the value of the engine before it was repaired, so it is a total loss. Plaintiff is entitled to the value of the engine in its condition before the original repairs by the defendant, i. e., the sum of $2,750, and, of course, plaintiff is relieved of paying the costs of the repairs by defendant.
Although plaintiff prayed for damages for loss of part of his rice crop, there is no evidence to support this claim.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Robert Dupre, and against the defendant, Tri-Parish Flying Service, Inc., for the sum of $2,750, together with legal interest thereon from date of judicial demand until paid. All costs in the trial and appellate courts are assessed against the defendant-appellee.
REVERSED AND RENDERED.