CUTRER, Judge.
Plaintiff, Keith Landry, brought this suit to recover damages for repair of defective cabinets installed in Landry’s home by defendant, Clovis Racca; to cancel a labor lien filed by Racca and to recover attorney’s fees for the cancellation of the labor lien. Racca filed a reconventional demand to recover the sum of $975.00 for “extras” installed for Landry by Racca. The trial court dismissed the demands of Landry and the reconventional demand of Racca. Landry appealed. Racca did not appeal the judgment dismissing the reconventional demand.
The issues presented on appeal are: (1) Whether Landry’s final payment to Racca for carpentry work amounted to acceptance of the work, thus barring Landry from seeking to recover the cost of repairing defects of which he was aware before payment; (2) if Landry is entitled to bring this action, what damages is he entitled to recover; and (3) whether Landry is entitled to recover damages and attorney’s fees in connection with Racca’s refusal to cancel a lien.
Landry employed Racca to perform the labor for the construction of Landry’s residence in Lake Charles. Construction began on October 31, 1978. No price for the labor was agreed upon at the time that construction began. The work on the house progressed and on December 5, 1978, Landry paid Racca $7,024.64 as partial payment for the work done by Racca. On February 27, 1979, a second payment was made to Racca by Landry in the amount of $3,588.00, bringing the total paid Racca to $10,588.00. At the time of this latter payment, Racca testified that the work on the house had not been completed. He stated that there remained the work of installing some baseboards, base shoes and cutting some doors. Racca stated that he had included this remaining work in the second payment paid to him by Landry on February 27, 1979. He stated, however, that this payment did not include the “extras” he later demanded in his reconventional demand. Racca further testified that about one week after the February 27th payment, Landry called him stating that the kitchen cabinets were un-level and requested that Racca level same. Racca agreed to level the cabinets. On March 17th, Racca, along with his son, returned to the residence to perform the leveling work on the cabinets. Racca testified further that, on March 24th, he finished the work on the baseboards, base shoes and the cutting of doors. This was the last work done on the house by Racca.
After the cabinets were originally installed, Landry had installed the sink, dishwasher and formica counter top. Testimony at trial reflects that in order to level the cabinets, it would be necessary to remove and reinstall the sink, dishwasher and formica counter top. Landry brought suit for $700.25, which included the costs of leveling the cabinets, removing and replacing the formica and removal and reinstallation of the sink and dishwasher. Landry also sued for attorney’s fees for cancellation of a lien filed by Racca.
The trial judge, in oral reasons for judgment, stated that he was dismissing the plaintiff’s demands for the reason that the unlevel condition was obvious by mere visual inspection. The trial court stated that this obvious unlevel condition existed when Landry made the second or final payment to Racca. Under these circumstances, the trial court then held that there was an apparent “accord and satisfaction” between Landry and Racca as to the obvious defect, thus Landry had no claim against Racca for any leveling costs. We disagree with this position.
An examination of the testimony of Rac-ca clearly reflects that further work was to be performed after the second payment was made. Racca testified that the second payment was not a final payment. He stated that he told Landry that the payment did not include the costs of “extras” that he claimed in his reconventional demand. Also, Racca testified that Landry called him about a week after the second payment complaining of the unlevel cabinets. Racca *1015 agreed to perform this leveling work. [1]Pursuant to this agreement, Racca performed the leveling work about a week later. Racca felt that he had successfully leveled the cabinets, but the evidence is clear that they remained obviously unlevel after Racca attempted to level same.
The second payment by Landry did not bar him from claiming the cost to level the cabinets since it was agreed by Racca that he would remedy the defect and did attempt to do so. We will reverse the trial court and allow the cost of leveling the cabinets which, according to the exhibit introduced by Racca, was $250.00.
The trial court, in its reasons for judgment, also found that Landry, faced with an obviously unlevel cabinet, installed the formica counter top, sink and dishwasher. The formica would have to be replaced entirely and the sink and dishwasher would have to be disconnected and reinstalled when the cabinet was leveled. The trial judge concluded that Landry could have mitigated these damages by not making these installations until after the leveling was accomplished. Due to Landry’s failure to mitigate these damages, the trial - court concluded that Landry could not recover these expenses.
It is the duty of an injured party to mitigate his damages after a wrongful action occurs. This rule applies to both tort and breach of contract actions. Lawyers Title Insurance Co. v. Carey Hodges & Assoc., 358 So.2d 964 (La.App. 1st Cir. 1978); Dupre v. Tri-Parish Flying Serv., Inc., 355 So.2d 554 (La.App. 3rd Cir. 1978). We agree with the trial court that the failure of Landry to mitigate his damages would bar him from recovering the expenses of disconnecting and reinstalling the sink and dishwasher, and for the removal and reinstalling of the formica counter top. We agree with the trial court in this regard.
We next examine the issue of whether damages and attorney’s fees are due for Racca’s refusal to cancel the labor lien filed against Landry’s property.
Racca filed a labor lien on May 23, 1979, stating that he had furnished labor for the installation of “extras” for the sum of $975.00 which had not been paid. Landry demanded, by letter of June 11, 1979, that the lien be cancelled. Racca refused to cancel the lien and reconvened for the $975.00 in the present action. The trial court dismissed this reconventional demand, having found that Racca had been fully compensated by Landry for all work in the February 27, 1979 final payment.
In his petition, Landry asked that the lien be cancelled and that he be awarded attorney’s fees for the failure to cancel. The trial court ordered the lien to be can-celled, but denied attorney’s fees. The trial court found that, since there was no evidence to indicate that Racca acted arbitrarily or capriciously in refusing to cancel the lien, Landry was not entitled to attorney’s fees. The trial court erred.
Under the Residential Truth in Construction Act, LSA-R.S. 9:4851 through 9:4855, a notice of lien rights must be given to the owner of residential property when home improvements or construction would entitle any person to lien rights against the property. Racca admitted that he did not give such required, non-waivable notice. Racca failed to comply with the Residential Truth in Construction Act.
LSA-R.S. 9:4855 provides for penalties in violation of the provisions of the Act as follows:

“In the event any liens are perfected under the provisions of this Part against any immovable property for work or improvements covered under the provisions of this Subpart and the contractor has failed to comply with the provisions of 
*1016
this Subpart, or, if, having technically complied with this Subpart, has willfully, knowingly, and unlawfully falsified any statements or fraudulently obtained the signature of the owner or his agent, such owner shall have a civil cause of action therefor, and shall be entitled to reasonable damages and attorney fees. . . ’’ (Emphasis added.)

This statute pertains to residential property and under this provision, it is not necessary to show that the refusal to cancel the lien was arbitrary and capricious.[2] The statute simply provides that an improperly perfected lien gives rise to a cause of action and entitled the owner to reasonable damages and attorney’s fees.
Landry introduced evidence, without objection, that he suffered damages in the amount of $29.00. This enlarged the pleadings to include a demand for damages. This sum represented the premium for a bond required by the institution financing Landry’s home. We will award this item as damages resulting from the lien which did not comply with the Residential Truth in Construction Act.
We will also award the sum of $250.00 as attorney’s fees in connection with the suit for cancellation of the lien. The Court of Appeal has the authority to award attorney’s fees by applying its knowledge to the extent of services rendered by counsel. Mathieu v. Nettles, 383 So.2d 1337 (La.App. 3rd Cir. 1980); Texhoma Contractors v. So. Shipbldg. Corp., 337 So.2d 584 (La.App. 4th Cir. 1976).
For the reasons assigned, the trial court judgment is reversed insofar as it dismissed plaintiff’s demands and it is now ordered that there be judgment in favor of plaintiff, Keith F. Landry, and against defendant, Clovis Racca, in the amount of $529.00. All costs, both at the trial level and on appeal, are assessed against defendant-appellee, Clovis Racca.
REVERSED AND RENDERED.

. Racca testified as follows in this regard:

"When he call me about a week after he had paid me the final footage payment. He called me and said the cabinet was off. I said, ‘Okay. I’m going to go check it, but I have three houses going.’ I said. ‘First chance I sets. I’m aoine to so level it. ’ So that was a week after he paid me that he had called. Then there was another week before I could get to it. So that was two weeks from that date there that I went and level it.”

. Under LSA-R.S. 9:4821, pertaining to property other than residential, it must be shown that the refusal to cancel a lien was arbitrary and capricious in order to recover attorney’s fees.