407 So.2d 443 (1981)
W. R. ROGERS, Plaintiff-Appellee,
v.
NELSON DODGE, INC. and Chrysler Corporation, Defendants-Appellants.
No. 8474.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1981.
Rehearing Denied January 4, 1982.
*444 Collings & Collings, R. William Collings, Lake Charles, for defendants-appellants.
Camp, Carmouche, Palmer, Barsh & Hunter, Wade N. Kelly, Lake Charles, for plaintiff-appellee.
Jones, Patin, Tete, Nolen & Hanchey, Kenneth Spears, Lake Charles, for defendant-appellee.
Before CULPEPPER, CUTRER and LABORDE, JJ.
CUTRER, Judge.
This is a suit to recover damages for a breach of a contract to repair a motor home.
The facts presented in this case are: On September 15, 1978, W. R. Rogers purchased a used 23 foot Dodge Motor Home from Tracey Cooper for the sale price of $14,500.00, of which $1,500.00 was paid and the remainder financed through Lakeside National Bank of Lake Charles at $244.95 per month for seven years. Including finance charges, Rogers would pay over $20,000.00 for the motor home. This vehicle, at the time of purchase, had 3,500 miles on the odometer and by the date of trial, December 10, 1980, the mileage was 11,500 miles.
During the first week after purchase Rogers took the motor home to defendant, Nelson Dodge, Inc. (Nelson), who was the factory authorized service center for Dodge-Chrysler products, complaining of engine noise and a loss of power steering. Service personnel at Nelson stated that they did not service such vehicles. A mechanic stated, however, that the noise sounded like a loose belt and he tightened it for Rogers. Rogers then drove the motor home to New Orleans and, in the process, discovered that the suspension sagged. He returned the motor home to Nelson on September 26, 1978, but was again told that Nelson did not work on these vehicles. Rogers continued to use the motor home even though the problems existed. On October 6, 1978, Rogers made a trip to Houston, Texas and experienced a loss of power and a squealing noise in the engine. He returned again to Nelson for help on October 9th but was refused.
Rogers parked the motor home in his driveway from October 9 to December 13, 1978. He again returned to Nelson hoping to have the motor home certified as fully operational for use in the up-coming swim season in which his son participated with the Y.M.C.A. One of the reasons for the purchase was that he wanted to avoid hotel/motel expenses as the family participated in various activities. Nelson again refused to check the motor home. On January 6, 1979, Rogers and family attended a swim meet in Baton Rouge. On this journey he experienced again the same loss of power and, upon return to Lake Charles, took the motor home to Nelson on January 10, 1979 where he was met with the same refusal.
The motor home was not used again until February 23, 1979. At that time, the motor home stalled in Lake Charles and Rogers was unable to start it. He telephoned Nelson who towed the motor home to their shop on February 27, 1979. Nelson disassembled the engine to ascertain the problem. The testimony indicates that a valve problem existed which Nelson contended it repaired. The engine was reassembled and turned over to Rogers on March 15, 1979.
While enroute home Rogers noticed there was no oil pressure registering on the dash board gauge. He called Nelson who sent out a wrecker on March 16th to return the motor home to the shop. Nelson replaced the oil pump and the motor home was returned to Rogers two weeks later.
Rogers then took a trip to Alexandria on Easter Sunday, April 15th. He experienced a noise in the engine and returned the vehicle on April 17th and 19th for inspection. On April 19th a mechanic informed him that the noise sounded like an engine knock but the service manager assured *445 Rogers that he would be able to make a trip to Houston that Rogers had planned. Rogers did so on April 19th. Upon his return he experienced loud noises and a loss of power, necessitating driving at 15-20 miles per hour from Beaumont to Lake Charles. He returned the motor home to Nelson on April 23, 1979.
Nelson then kept the motor home for more than three months. Rogers was told the problem was due to the main bearings having been installed incorrectly in the engine. Testimony by one of Nelson's mechanics indicated that the problem may have been due to the engine being started without it having been filled with oil at the time it was torn down for inspection February 27 through March 15, 1979.
To remedy the problems Nelson decided to make some major changes in the engine. Chrysler Corporation furnished a short block to Rogers for customer relations purposes and Nelson installed it. The installation of the short block evolved into a reduction of the size of the engine from 440 cubic inches to 360 cubic inches. A dispute over who was to pay for labor arose and Rogers paid a $1,001.55 labor charge under protest so he could regain possession of his motor home. Rogers got delivery of the motor home on July 16th. On this date he and a mechanic made a test drive and the vehicle's alternator indicator discharged due to improperly installed wiring. The motor home was then returned and picked up again on July 26th.
On July 27th, Rogers and his family attended a swim meet in Alexandria. On this trip he experienced unstable handling and extremely poor performance. He found the rear left springs were not properly tightened. He returned the motor home to Nelson on July 30th where the distributor was re-set and tightened down. This had not been done when the engine was installed in February 1979. The rear left springs were also tightened.
On August 1st, Rogers started on a trip to Wisconsin. While on this trip, engine noises developed again. Upon inspection by a mechanic in Missouri, it was found that the flywheel dust cover, oil line retaining clips and transmission line retainer were all left off at the time of the previous repair by Nelson. Also, there were several oil leaks. The mechanic in Missouri did not have parts for the necessary repairs. He told Rogers that he could drive the motor home with the existing problems and deficiencies but that Rogers would have to watch the oil level carefully in view of the leaks. Rogers managed to get back to Lake Charles by following such instructions and adding oil. He returned the motor home to Nelson on August 13th. Rogers made several calls requesting work to be done and when nothing was done by August 28th, he took the motor home to his house, parked it in his yard and instituted this suit.
Rogers filed suit for damages against Nelson Dodge and Chrysler Corporation. Chrysler's exception of prescription was sustained and suit was dismissed as to this defendant. After a jury trial, a general verdict was returned awarding damages to Rogers and against Nelson in the amount of $10,000.00. From that judgment, Nelson has perfected this appeal.
The issues presented on appeal are:
(1) Whether Nelson is liable to Rogers for the breach of a contract;
(2) Whether Rogers failed to mitigate his damages; and
(3) Whether the award by the jury was excessive.

BREACH OF CONTRACT
The first issue is whether Nelson is liable for damages to Rogers for a breach of contract to repair the motor home.
The obligations of one who undertakes the performance of a contract for services are set forth in the case of Tiger Well Service v. Kimball Production Co., 343 So.2d 1153, 1157 (La.App. 3rd Cir. 1977), where this court held as follows:

"It is generally held that under the cited articles every contract for work or services carries an implied obligation on the part of the contractor that he will perform in a good workmanlike manner *446 in default of which he must respond in damages for the losses that may ensue. In Hebert v. Pierrotti, 205 So.2d 888 (La. App. 3rd Cir. 1968), we stated:

`As a general rule, there is implied in every contract for work or services that the work will be performed in a skillful, careful, diligent and good workmanlike manner. LSA-C.C. arts. 1930 and 2769;[[1]] Wolfe v. LeVasseur-Hinson Construction Company, 147 So.2d 747 (La.App. 2d Cir. 1962); Hunter v. Mayfield, 106 So.2d 330 (La.App. 2d Cir. 1958); Rotolo v. Stewart, 127 So.2d 24 (La.App. 1st Cir. 1961); Rathe v. Maher, 184 So.2d 256 (La.App. 1st Cir. 1966); 17A C.J.S. Contracts § 329, p. 292; 17 Am.Jur.2d, Contracts Sec. 371, p. 814.'"

As we examine the record in light of these principles we conclude that Nelson failed to perform the repair work in a workmanlike manner. The evidence reflects that Rogers encountered a succession of serious problems with the operation of the motor home. The motor home became unreliable and practically useless to Rogers. The evidence shows that such condition was due to lack of workmanlike performance by Nelson in its endeavors to make repairs.
The initial dismantling and reassembly of the engine, and the ultimate change of engines, resulted in a succession of problems caused by lack of workmanlike performance.
We find that the evidence clearly justifies the jury conclusion that Nelson had breached its contract to render the repair services. Such breach of contract would entitle Rogers to any damages he may have incurred.

DAMAGES
The damages recoverable for a breach of a service contract were set forth by the Supreme Court in the case of Meador v. Toyota of Jefferson, Inc., 332 So.2d 433, 434, 435 and 437 (La.1976):
"Generally, recovery for damages upon the breach of a contract is limited to the loss a person has sustained or the profit of which he has been deprived.... However, in certain limited circumstances a person may, upon the breach of a contract, recover damages for nonpecuniary loss....
* * * * * *

"Thus, we would interpret Article 1934(3)[[2]] as follows: Where an object, or the exclusive object, of a contract, is physical gratification (or anything other than intellectual gratification) nonpecuniary damages as a consequence of nonfulfillment of that object are not recoverable."

The trial judge properly instructed the jury that any damages to be awarded to Rogers must be limited to pecuniary losses *447 incurred by Rogers. Nelson contends that the award of $10,000.00 as a pecuniary award was excessive.
The trial judge, in his reasons for overruling a motion for a new trial, made these following observations:

"I don't know what the jury based its decision on. It obviously had to be one of two things: one, it accepted plaintiff's testimony that the motor home was of no value, that it probably could not have been repaired, that it would never serve the function of a motor home and, considering the established initial value based on the purchase price and a calculation of some salvage value, the jury reached the decision of $10,000.00. The other approach it might have taken was to consider the actual money paid by plaintiff to Nelson Dodge, $1,000.00 for repairs, five months of down time during the time the repairs were being made, and many months of down time when the plaintiff parked the motor home at his house and left it there, and the simple multiplication of the total months of down time by the amount of payments that he made, which was an approach sanctioned in the case of Meador v. Toyota, 332 So.(2d) 433 (La.1976). By using these figures and adding a reasonable amount for depreciation, the jury could have come up with $10,000.00.

"There was no appraisal testimony presented by either side, nor was there any expert mechanic testimony presented by either side with regard to the condition of the vehicle at the time plaintiff parked it at his house or later. .... There is plaintiff's own testimony and that of his wife about how the vehicle ran and how much trouble he had with it, and I had no hesitation and the jury obviously felt the same way in believing plaintiff. His testimony was highly credible. .... The fact that defendant tried many, many times to repair the vehicle and according to a preponderance of the testimony it failed to repair the vehicle is additional evidence that it could not be repaired."
We agree with the trial judge. There is ample evidence in the record to support the verdict of the jury. Due to a lack of expert testimony, the damages of Rogers cannot be estimated exactly, but this lack of exactness does not bar the jury from awarding reasonable damages according to the facts and circumstances of the case. In Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151, 155 (1971), the Supreme Court stated as follows:

"Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. Civil Code Art. 1934(3); Brantley v. Tremont & Gulf Ry. Co., 226 La. 176, 75 So.2d 236 (1954), and decisions therein cited. ...."

See also: North American Contracting Corp. v. Gibson, 327 So.2d 444 (La.App. 3rd Cir. 1975), writ den., 332 So.2d 280 (La. 1976).
We find that the jury was not clearly wrong in its award of damages.

MITIGATION OF DAMAGES
Nelson contends that Rogers' recovery should be reduced due to his failure to mitigate his damages by not having his motor home repaired rather than letting it sit from August 28, 1979, to December 10, 1980, the date of the trial.
It is well settled law that:
"... it is the duty of an injured party to mitigate his damages after a wrongful action occurs. This rule applies to both tort and breach of contract action."
Landry v. Racca, 386 So.2d 1013, 1015 (La. App. 3rd Cir. 1980). In Dupre v. Tri-Parish Flying Service, Inc., 355 So.2d 554, 556 (La. App. 3rd Cir. 1978), we quoted the test adopted by our Supreme Court in Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (La. 1968), which stated:

"... the consequences of an injury are recoverable where the injured party acts with such care and diligence as a man of ordinary prudence would under the circumstances, and his efforts to minimize *448 damages are determined by the rules of common sense, good faith and fair dealing."

The trial judge, in his reasons for overruling the motion for a new trial, properly disposed of this issue in view of the principles set forth above. We quote, in part, such reasons:
"In connection with this issue defendant's argument is that plaintiff simply parked the vehicle that needed only minor repairs and let it sit for months and that he should not be allowed to recover damages for all that time when he could have repaired it and used it. Of course, the answer to that is there is no evidence at all in the record that the vehicle could have been repaired and used. And plaintiff's explanation of why he did that is plausible and I believe truthful when he explained that having experienced defendant's vain attempts to repair the vehicle he came to the conclusion it couldn't be repaired. Furthermore, he had an additional problem, where would he take it to be repaired? The only Dodge dealership nearby was Nelson Dodge."
We hold that Rogers did not violate any duty to mitigate damages.
For the reasons assigned, the judgment of the trial court is affirmed. Defendant, Nelson Dodge, Inc., is to pay all costs of this appeal.
AFFIRMED.
CULPEPPER, J., dissents and assigns reasons.
CULPEPPER, Judge, dissenting.
I dissent, being of the opinion plaintiff has not proved pecuniary damages of $10,000.
Briefly, the facts are that plaintiff purchased the motor home in 1978 from a third party for $14,500. It had 3,500 miles on it at the time. By the time of trial in 1980, it had 11,500 miles on it.
Although Nelson Dodge, Inc. did not want to attempt the repairs, it finally agreed to try, motivated principally by Chrysler Corporation's agreement to furnish a new engine of less horsepower. Chrysler Corporation was dismissed on an exception of prescription. Now, Nelson Dodge is faced with paying a $10,000 judgment for defective repairs which it did not want to attempt in the first place.
Although I can agree that the attempted repairs were unworkmanlike, I cannot agree that plaintiff has proved pecuniary losses of $10,000. There is no evidence as to the value of the motor home before or after the repairs by Nelson Dodge. Nor is there any other evidence to show any pecuniary loss by plaintiff. He lost the use of this recreational vehicle for several months, and there is no doubt that the delay and the mechanical difficulties caused him much aggravation, mental distress and inconvenience. However, these nonpecuniary damages are not recoverable.
The law is clear. Under Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976) non-pecuniary damages for breach of contract are not recoverable except where the contract has for its object the gratification of some intellectual enjoyment. LSA-C.C. Article 1934(3). In Meador, an 18-year-old girl took her Toyota automobile to defendant for repairs. Defendant delayed repairs and did not return the automobile to plaintiff for several months. She sued for damages for aggravation, distress and inconvenience caused by the delay. The trial court awarded her $1,554. The Supreme Court, with only one dissent, reversed, holding that plaintiff was not entitled to damages for aggravation, distress and inconvenience. The court stated the object of the contract was not intellectual enjoyment, citing LSA-C.C. Article 1934(3).
Although Meador has been criticized, it is still the law and is controlling on us in the present case.
For the reasons assigned, I respectfully dissent.
NOTES
[1] LSA-C.C. art. 1930 states:

"The obligations of contract [contracts] extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default."
LSA-C.C. art. 2769 states:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
[2] LSA-C.C. art. 1934 reads, in pertinent part, as follows:

"Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications."
* * * * * *
"3. Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule."