352 So.2d 341 (1977)
L. Scott PATTON
v.
PRECISION MOTORS, INC.
No. 8471.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1977.
Brian L. Williams, Baton Rouge, for plaintiff-appellee.
Satterlee, Mestayer & Freeman, Henry F. Mestayer, New Orleans, for defendant-appellant.
Before LEMMON, GULOTTA and SCHOTT, JJ.
GULOTTA, Judge.
Defendant appeals from a judgment awarding plaintiff costs for repair of an *342 automobile transmission and additional damages for delay, inconvenience, loss of use and mental anguish. We affirm.
On July 11, 1974, plaintiff purchased a used Lotus Europa automobile. Approximately one week thereafter, he took the vehicle to defendant for an 18,000-mile checkup and specified that the starter, suspension, transmission and clutch be inspected. The vehicle remained at Precision until August 8, 1974, the delay occasioned by inability to obtain a replacement flywheel. Between August 8 and August 19, plaintiff noticed a tightening in shifting. On August 19, he heard grinding noises apparently coming from the transmission. Although not a mechanic, plaintiff noticed, upon inspection, that seals from the transmission had been displaced. On September 15, 1974, he towed the vehicle from Baton Rouge to New Orleans and returned it to Precision where it was ascertained that the transmission had been completely ruined. Defendant removed the transmission from the car and plaintiff took it, in a disassembled condition, to Benton, Inc., for repairs. When work on the transmission was completed, Benton returned it to Precision where it was installed in the vehicle. Plaintiff obtained the car from defendant on February 19, 1975, but still encountered difficulty in shifting. The automobile was then returned to Benton where, among other things, repairs were made to the "shift linkage". Thereafter, plaintiff filed suit against Precision for damages resulting from the destruction of the transmission.
According to the mechanics who testified, the problem was caused by the absence of "clips" from the transmission assembly. These locking nuts were either missing or worked themselves free and allowed the transaxle seals to back out, thereby causing damage to the transmission. The trial judge stated, in oral reasons for judgment, that Precision had not performed the 18,000-mile checkup which, if properly done, would have revealed the absence of the clips or any problem with them. He further stated that in removing the flywheel, it was necessary for Precision to dismantle the transmission and, therefore, the circumstantial evidence indicated that its employees had the "greater possibility" of negligently removing the clips or improperly replacing them in reassembling the transmission after replacement of the flywheel.
On appeal, defendant complains that the trial judge admitted hearsay evidence by permitting the introduction of two repair orders prepared by Benton, Inc. According to defendant, the mechanic from Benton who performed the actual services did not testify and no one from Benton confirmed that the Benton repair orders are receipts for sums paid by plaintiff. Defendant argues further that plaintiff has failed to prove by a preponderance of the evidence either direct or circumstantiala causal connection between the transmission damages and any action on the part of Precision. Defendant also complains that even if causation is proved, plaintiff has failed to present evidence justifying the $500.00 general damage award for inconvenience, loss of use, delay and mental anguish. We disagree.

ADMISSIBILITY OF THE DOCUMENTS
We find no merit to defendant's contention that the two documents prepared by Benton, Inc. are inadmissible.
One of the questioned exhibits is a copy of a Benton, Inc. invoice dated February 6, 1975. The total of the invoice is $1,162.68 and the words "Pd cash" are written across the front of the invoice. Included in the total is a labor charge of $127.50, corresponding to the words "Rebuild 3364 Speed Trans." Also included is a $979.81 subtotal of parts which are itemized by part numbers and names.
The second questioned exhibit is another Benton, Inc. invoice dated February 20, 1975, also made out to plaintiff for a total of $334.32. The invoice is marked "Paid 3-7-75 Cash" and includes charges for an 18,000-mile inspection and repair of shift linkage. The trial judge allowed recovery for $94.15 from this invoice.
Dale Pinney, formerly employed as a service manager by Benton, Inc., identified the *343 invoices as Benton work orders. Further, he stated the transmission had been brought to him by plaintiff in a disassembled state after it had been removed by Precision. This witness checked the dismantled transmission and ordered the parts itemized on the exhibit. Though he did not do the work himself on plaintiff's car, he did examine the February 6, 1975 invoice and testified that the parts listed therein were those necessary to fix the transmission. Plaintiff testified that the amount of the invoice was paid by him in full, and the document itself is marked paid. Precision acknowledged that it removed the transmission from the car in order that plaintiff might take it to Benton for repairs and that it reinstalled the rebuilt transmission thereafter. Under the circumstances, we find no evidentiary error when the trial judge permitted introduction of the Benton invoices to show repairs made to the transmission.

CAUSATION
Though it is undisputed that the absence of the clips caused the damage to the transmission, no direct evidence exists to show how the clips became missing or disengaged. The cause of their absence can only be determined from circumstantial evidence.
As stated by the Louisiana Supreme Court in Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971):
". . . [P]roof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not."
See A & M Pest Control Service, Inc. v. Fejta Construction Co., Inc., 338 So.2d 946 (La.App. 4th Cir. 1976) and Dussouy v. Fireman's Fund Insurance Company, 346 So.2d 1122 (La.App. 4th Cir. 1977).
In the instant case, the evidence as a whole shows that Precision's negligence more probably than not caused the clips to become disengaged. At the time the automobile was first taken to Precision by plaintiff for the 18,000-mile checkup, the clips in the transmission were not missing. The former owner of the vehicle who sold the car to plaintiff on July 11, 1974, testified that the vehicle was in good condition except for a minor problem with the starter and that he had never had difficulty with the transmission. Plaintiff himself testified that prior to taking the car to Precision, it drove well with the exception of problems with the starter and some minor sticking of the shift in third gear.
Though the service manager of defendant testified that no necessity existed to disassemble the transmission in order that work might be performed on the flywheel and through Precision's mechanic testified that he had not removed the clips in the course of performing work on the vehicle, plaintiff testified that he had seen the disassembled transmission sitting apart from the engine during the course of repairs at Precision. He further stated that upon receiving his car on August 7, 1974, after the initial repairs had been performed, he had observed two "holes" in the transmission where, as he later learned, the clips should have been located. Pinney, the service technician at Benton, Inc., testified that any irregularities concerning the clips should have been observed during the 18,000-mile inspection which involves a check of tightness of nuts and bolts on the drive shaft and universal joints which are located in close proximity to the clips. Pinney further testified that it is very unlikely that the clips would have vibrated off by themselves. Plaintiff testified that after receiving the vehicle from Precision on August 7, 1974, his problems with the vehicle began. Pinney testified that when the disassembled transmission was brought to him for repairs, the clips were not present.
Defendant, however, points out that the car was driven for approximately 1,800 miles during the period from August 7, 1974, when plaintiff received the car from Precision, until September 15, 1974, when it was towed to New Orleans from Baton Rouge. In view of testimony by the mechanics that a car without clips could not *344 have been driven at highway speeds[1] and that towing the car without clips would have the same effect as driving it in that condition and would cause damage to the transmission, defendant argues that a reasonable possibility exists that plaintiff himself damaged the transmission by towing it. We are not persuaded by this argument.
Pinney testified that a car driven "around town" without clips might be operable for several months though it would not last for "very long" during highway driving. He did not specify, however, what distance in highway driving could be travelled without the clips. The fact that the car was driven for 1,800 miles does not compel a conclusion that Precision was not negligent. A reasonable conclusion is plausible, from the facts surrounding this case, that Precision negligently replaced the clips in such a manner that they remained on the vehicle for some time, permitting plaintiff to drive the automobile on the highway before it became inoperable. Furthermore, it is not logical that plaintiff would have towed the vehicle had it not broken down. We also point out that plaintiff could not be expected to know that using a tow bar would damage the transmission in the absence of the clips. Under the circumstances, we conclude, as did the trial judge, that defendant's negligence is the most plausible explanation for the absence of the clips.
The evidence considered, we cannot say the trial judge erred when he concluded Precision's negligence caused the transmission damage.

QUANTUM
We reduce the $1,464.33 special damage award by the sum of $94.15. Plaintiff is entitled to total special damages in the amount of $1,370.18, i. e., the sums of $1,162.68 (the cost of labor and parts to rebuild the transmission as represented by the total of the February 6, 1975 invoice of Benton, Inc.), $175.00 (a refund to plaintiff of Precision's charge to remove the transmission from the car in order that it might be repaired by Benton) and $32.00 (a refund to plaintiff of Precision's fee for storing the vehicle while the transmission was being repaired). The trial judge erroneously awarded, however, the additional sum of $94.15 for the cost of "transmission parts". This figure appears on the February 20, 1975 invoice of Benton, Inc., as the total cost of several parts identified by part number only. Plaintiff testified that after the repaired transmission was installed by Precision, he still encountered difficulty with shifting. This invoice indicates that the shift linkage was repaired, that the 18,000-mile inspection was performed and that certain other repairs, presumably unrelated to the transmission, were made. However, neither the parts specifications on the invoice nor testimony in the record indicates that the $94.15 amount is related to any transmission parts or any problem whatsoever with the transmission. Plaintiff failed to carry the burden of showing entitlement to this amount. Accordingly, we reduce the total special damage award by $94.15.
With regard to the $500.00 general damage award for delay, inconvenience, loss of use and mental anguish, plaintiff testified that as a result of the destruction of the transmission, he was unable to drive his car from August 19, 1974 until March 7, 1975, though he was obligated during that time to continue making payments on his car loan. During this period he was required to use alternate means of transportation. We are impressed by plaintiff's testimony that he suffered inconvenience occasioned by the loss of use of his vehicle. This testimony, together with the fact that plaintiff was required to tow the vehicle himself from Baton Rouge to New Orleans and thereafter to transfer the transmission to Benton, Inc., forms a substantial factual basis for the general damage award.
A plaintiff is entitled to a general damage award for inconvenience and loss of use when the damages to his property result *345 from a defendant's negligence. In Nolan v. Liuzza, 301 So.2d 892 (La.App. 4th Cir. 1974), an award of $500.00 was made to a car owner for loss of use of his vehicle for approximately six months while tort-caused damages were being repaired. In the instant case, plaintiff's vehicle was disabled for a similar period of time while the transmission was being overhauled. We do not consider the $500.00 award to be excessive under the circumstances.[2]
Consistent with the above, we reduce the award in favor of plaintiff by the sum of $94.15. Accordingly, the judgment is amended and recast as follows:
IT IS ORDERED that there be judgment herein in favor of the plaintiff, L. Scott Patton, and against the defendant, Precision Motors, Inc., in the amount of One Thousand Three Hundred Seventy and 18/100 ($1,370.18) Dollars in special damages and Five Hundred and No/100 ($500.00) Dollars in general damages, totalling One Thousand Eight Hundred Seventy and 18/100 ($1,870.18) Dollars, together with interest at the rate of 7% per annum from date of judicial demand until paid and for all costs of these proceedings.
In all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] Plaintiff testified that he had, during this period, driven the vehicle from New Orleans to Baton Rouge.
[2] Although the trial judge included in the $500.00 award damage for "mental anguish", our court in Carimi v. Saia, 301 So.2d 895 (La.App. 4th Cir. 1974) refused to allow damages for "mental anguish" or "emotional stress" unless accompanied by illness or bodily harm. It appears, however, that the Third Circuit in Jardell v. Sabine Irrigation Company, Inc., 346 So.2d 1365 (La.App. 3d Cir. 1977) would reach a different result and would consider a compensable item of damages for mental anguish in a case such as the instant one. See also Trahan v. Florida Gas Transmission Company, 208 So.2d 550 (La.App. 3d Cir. 1968). Because we have determined that a $500.00 award for inconvenience and loss of use of the automobile is not excessive, any further discussion of "mental anguish" (not accompanied by illness or bodily harm), where property damage results from a tort, is academic.