448 So.2d 738 (1984)
Alvin G. PIKE, Jr.
v.
STEPHENS IMPORTS, INC.
No. CA-1206.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1984.
*739 Stephen C. Hartel, Jr., Arion R. Boyle, New Orleans, for appellee.
Turner, Young & Hebbler, Emile L. Turner, Jr., New Orleans, for appellant.
Before GULOTTA, SCHOTT and LOBRANO, JJ.
*740 GULOTTA, Judge.
In this action for damages from defective repair of an automobile, Stephens Imports, Inc. (Stephens), appeals from a judgment awarding the vehicle owner $4,000.00 for "inconvenience, loss of use, aggravation, delay and mental anguish", and fixing $1,000.00 as an expert's fee. In answer to the appeal, plaintiff seeks increases. We affirm.

BACKGROUND
Alvin G. Pike's 1979 Mercedes Benz 300 SD automobile sustained severe front-end damage in a collision on January 20, 1980. After preparation of an insurance estimate itemizing the extensive body and mechanical wreckage, Pike authorized Stephens to undertake the repairs in March, 1980.
By the second week of June, 1980, the body work on the car was completed except for painting. After reinstalling the engine and beginning trim work, Stephens discovered that a new dashboard would have to be ordered from Germany because two fasteners necessary to lock it to the vehicle's "console" were broken.
When this new dashboard arrived forty-five days later in early August, 1980, Stephens found more damaged wood trim behind the old dashboard. After this newly ordered trim was received in early October, 1980, the repairs were completed and the car was painted.
On October 16, 1980, however, Stephens learned during a road test that the car's transmission required replacement. This entailed obtaining a new transmission from Mercedes Benz. The car was released to plaintiff on December 11, 1980, at a total repair cost of $17,856.36.
Three days later, however, the vehicle was towed to Stephens from plaintiff's home in Covington because of complaints of engine noise. A defective valve, unrelated to the accident or any repair work by Stephens, had ruined a piston. The vehicle remained at Stephens from December 14, 1980, until January 25, 1981, for a warranty replacement of the engine block at no charge to plaintiff. Stephens also repainted the car to satisfy plaintiff's complaints of extensive scratching of the finish during repairs.
Plaintiff returned the car to Stephens on February 3, 1981, and again on April 23, 1981. The problems on these occasions concerned rough idling, the battery, air conditioner, cigarette lighter, cruise control, and misalignment of the glove compartment. Stephens adjusted a thermostat to increase the car's cooling capacity and changed the oil, but did not remedy the other complaints.
On May 5, 1981, Pike again returned the car, complaining of the valves, the cruise control, and a loose "kick panel" under the dash. Adjustments were made by Stephens on May 5, and again on May 14.
However, Pike returned the car again on June 23, 1981, for replacement of a turn signal switch listed on Stephens' original repair estimate. Prior to trial, Stephens last saw the car on September 2, 1981 on plaintiff's complaints about rough idling, leaks from the air conditioner, and the low position of the shift mechanism in the console. Stephens replaced fuel injection nozzles, cleaned the air conditioner, replaced its receiver-dryer, recharged the system, adjusted the thermostat and attempted to realign the shifter.
Dissatisfied with the delays and the quality of the workmanship, plaintiff filed suit against Stephens on April 8, 1982, seeking damages for past and future expenses, the cost of transporting the vehicle to Stephens for repairs, inconvenience and loss of use, and the cost of alternate transportation.
During the course of the trial, the parties reached a partial compromise, whereby Stephens (without admitting the existence of any defects) agreed to re-align a structural cross member, adjust the dashboard, correct the glove compartment problem, remedy a panel and noise in the air conditioning system, buff and polish the car, provide plaintiff with a substitute vehicle during these repairs, and reimburse him for amounts paid for a cruise control actuator and the turn signal switch. Pending these *741 repairs, the matter remained an open case on the issues of damages for untimely repairs and expert fees. After the repairs were made to plaintiff's satisfaction on May 17, 1983, the trial court awarded $4,000.00 in damages and set the fee of plaintiff's expert at $1,000.00 to be taxed as costs.

CONTENTIONS
Appealing, Stephens contends: 1) the trial judge manifestly erred in awarding damages because the long delay in making the repairs was justifiable and caused by circumstances beyond Stephens' control; 2) the $4,000.00 award for plaintiff's "... inconvenience, loss of use, aggravation, delay and mental anguish" is not recoverable as a matter of law in this action for breach of a contract to repair; 3) plaintiff failed to prove any damages since he purchased a new Mercedes automobile as a replacement vehicle during the repair of his wrecked automobile; and 4) the trial judge abused his discretion in fixing the fee of plaintiff's automotive mechanic expert at $1,000.00 instead of a more reasonable $500.00 amount.
In answer to the appeal, plaintiff asks that the $4,000.00 award be increased to $8,000.00, that the expert's fee be increased from $1,000.00 to $1,500.00, and that additional amounts of $1,100.00 and $800.00 be awarded, respectively, for the expense of remedying Stephens' defective work and the cost of the expert's pre-trial investigation. Stephens has filed a motion to dismiss plaintiff's answer to the appeal as untimely.

STEPHENS' APPEAL
Manifest Error
We reject Stephens' contention that the trial judge manifestly erred in finding that Stephens was "unreasonably dilatory" in repairing plaintiff's vehicle and that the "original negligent repairs to the car ... caused the subsequent delays, except for the motor replacement." The record supports these conclusions.
The defective nature of Stephens' repairs to the vehicle is evident from the litany of complaints previously outlined, which required plaintiff to return the car repeatedly for correction of various problems relating to Stephens' original workmanship.
In addition to plaintiff's testimony and copies of the work orders in evidence, plaintiff's expert, Ken Miller, testified at length concerning defects and problems in the vehicle. According to this witness, although the front and rear axle planes of the vehicle were correct following Stephens' body repair, the vehicle still had a "slight twist" to the frame from the front end damage. Miller found the main suspension cross member to be out of alignment and the variance "unacceptable". He observed a "very noticable" gap on the right hand side of the dash and a sinking of the shifter in the interior of the car, as well as an unsatisfactory paint job to the exterior. Miller felt that these defects were caused by improper alignment of the car's frame during repair and application of the finish coat before the primer had completely cured. His testimony was supplemented by a video tape of his inspection of the vehicle.
The trial judge viewed the video tape and examined the vehicle during trial. In written reasons for judgment, the trial judge noted that he had "personally observed that the Plaintiff's contentions relating to negligent repairs were justifiable...."
We point out that the trial judge ordered a measurement of the vehicle's frame on Stephens' body shop equipment to reconcile the dispute between plaintiff's expert and Stephens' body shop manager concerning the frame repairs. After this examination, the parties reached a compromise whereby Stephens agreed to realign the engine cross member and remedy other defects in the vehicle. Although Stephens did not thereby admit liability, it is obvious that its workmanship was unsatisfactory in many respects. Accordingly, we find no error in the trial judge's conclusion that defendant's repairs were "negligent".
*742 We further reject defendant's contention that the length of time for the repairs was "justifiable" because of uncontrollable delays in receiving trim items from Germany and the discovery of "hidden" damages in the course of the extensive restoration.
Although plaintiff's vehicle sustained severe front end damage involving hidden and unforseen problems requiring shipment of parts from Germany, Stephens' negligence in repairing the car caused subsequent delays after the car was returned to plaintiff in December, 1980. Furthermore, shipment of parts resulting in a delay of nine months to a year for repairs is unsatisfactory. Even assuming the original one year period to restore the car was excusable, plaintiff did not receive a vehicle completely repaired until May 1, 1983, after repeatedly returning the car to Stephens and ultimately filing suit. Under these circumstances, we find no error in the trial judge's conclusion that Stephens was "unreasonably dilatory in the time it took to satisfactorily repair ... from March, 1980 to May, 1983."
Non-Pecuniary Damages
Relying on Meador v. Toyota of Jefferson, 332 So.2d 433 (La.1976), Stephens next contends that plaintiff is not entitled to recover damages "for his inconvenience, loss of use, aggravation, delay and mental anguish" in a "breach of contract" action involving no tortious conduct. Based on our interpretation of later jurisprudence interpreting the landmark Meador decision, however, we find no error in the trial judge's award of these damages under the circumstances in the instant case.
In Meador, supra, the Supreme Court denied recovery of damages for aggravation, distress and inconvenience to a vehicle owner who had been denied the use of her automobile during the defendant's undue delay in repairing the car. Interpreting LSA-C.C. Art. 1934(3), the Meador court concluded that these damages were not recoverable in the action for breach of the repair contract since its principal object (repair of the vehicle) was a "physical" rather than an "intellectual" gratification. The court further noted, however, that non-pecuniary damages are recoverable in tort actions. Later cases relying on Meador have likewise denied claims for damages for mental anguish in actions for defective vehicle repairs. See Leach v. Freeman, 395 So.2d 440 (La.App. 3rd Cir.1981), writ denied 400 So.2d 668 (La.1981); Rogers v. Nelson Dodge, Inc., 407 So.2d 443 (La.App. 3rd Cir.1981); Williamson v. Alewine, 417 So.2d 64 (La.App. 3rd Cir.1982).
A separate line of jurisprudence, however, has restrictively interpreted the Meador holding. In Coddington v. Stephens Imports, Inc., 383 So.2d 416 (La.App. 4th Cir.1980), in an action for negligent breach of a duty to repair, this court concluded that a motorist, who had been stranded on the highway three times and had expended additional time and effort in having repairs completed properly and obtaining delivery of the vehicle, was entitled to recover $500.00 from the repairman for inconvenience. We held that Meador was not controlling under the circumstances, since Coddington's inconvenience could "... hardly be likened to the inconvenience an owner may suffer while his car sits in a repair shop unduly."
Later, in Gele v. Markey, 387 So.2d 1162 (La.1980), the Louisiana Supreme Court questioned the Meador doctrine in an action by lessees for emotional distress from destruction of their grocery business caused by a defective ceiling in the leased premises. Acknowledging the "rather inflexible rule" of Meador, which allows non-pecuniary damages in tort but not breach of contract actions (except where the contract has some intellectual enjoyment as its principal object), the Supreme Court noted that elements of contract and tort "are sometimes so intertwined that cases cannot easily be labeled one or the other" and that in "our system of fact pleading such labeling should be of little importance." Although no damages were awarded to the plaintiffs because of their failure to prove emotional stress or loss of intellectual enjoyment, the Supreme Court, in Gele, signified *743 its intention not to apply the Meador rule inflexibly in breach of contract actions.
More recently, in Ducote v. Arnold, 416 So.2d 180 (La.App. 4th Cir.1982), this court affirmed an award for inconvenience and mental anguish to plaintiff-homeowners in a breach of contract action for delay and faulty workmanship in the construction of an addition to their residence.
The Ducote majority examined Meador and its progeny in light of the Gele decision, and concluded that the Supreme Court's "narrow interpretation of Art. 1934(3) in Meador had broadened to permit recovery for real and substantial mental anguish if clearly proven". The plaintiffs in Ducote were entitled to recovery because they had proven real and substantial emotional distress from the defendant's breach of the contract by "quasi tortious acts or omissions".
Citing Chief Justice Dixon's dissent in Meador, the Ducote majority further observed that there was no logical reason to deny recovery simply because the cause of action was delineated as "contract" instead of tort, where courts have consistently awarded damages for mental anguish and inconvenience for property damage. Parenthetically, we note that in Patton v. Precision Motors, Inc., 352 So.2d 341 (La.App. 4th Cir.), without discussion of Meador, we affirmed a general damage award for delay, inconvenience, loss of use and mental anguish from negligent repair of an automobile.
In light of the jurisprudence subsequent to Meador, we adopt the rationales of Gele, Ducote and Patton to hold that a plaintiff, upon sufficient proof, may recover damages for inconvenience, loss of use, aggravation, delay and mental anguish for negligent breach of a repair contract, irrespective of the intellectual or physical nature of the contract's principal object.
In so holding, we further distinguish Babington v. Stephens Imports, Inc., 421 So.2d 275 (La.App. 4th Cir.1982), relied on by defendant. In Babington, a vehicle owner, whose car had been repaired by Stephens, sought damages for loss of use from Stephens' refusal to release the automobile without prior payment of the repair costs. In reversing the trial court's award for loss of use, we concluded in Babington that Stephens, pursuant to its repairman's privilege under LSA-C.C. Art. 3217(2), had been justified in retaining possession of the vehicle pending payment of the repair bill, and, therefore, had committed no tort entitling the owner to recover.
Unlike the instant case, Babington did not involve negligent and dilatory repairs, and we did not address the issue of a plaintiff's entitlement to recovery for breach of the repair contract. Under these circumstances, Babington simply has no application to our case.
Turning now to the facts before us, we conclude that plaintiff has adequately proven damages from Stephens' dilatory and negligent repair of his vehicle. As noted by the trial judge in his well-written reasons for judgment:
"The Defendant is the only licensed authorized dealer/distributor and repairman in the greater Metro New Orleans area of Mercedes Benz automobiles. These distinctive luxury vehicles imply status, wealth and the penultimate in automobile engineering. The Plaintiff was denied the use of his expensive, prestigious automobile cumulatively for almost 18 months and intermittently thereafter."
After waiting for nearly a year for the repair of his vehicle, plaintiff was subjected to the ordeal of returning his car five times to Stephens to remedy a variety of defects detracting from the full enjoyment of his automobile. It was only after filing suit and reaching a compromise with the defendant that the vehicle was ultimately repaired to his satisfaction on May 1, 1983, nearly three and one-half years after the damaging collision. Unlike Meador, where the cause of action simply arose from undue delay in making the repairs without any evidence of defective workmanship, the plaintiff in the instant case has suffered from both delay and negligence by Stephens *744 in performing the remedial work. Plaintiff has proven entitlement to damages.
Quantum
We further find no error in the amount of the award. In awarding damages for inconvenience and loss of use, the trial court has much discretion. See Alexander v. Qwik Change Car Center, Inc., 352 So.2d 188 (La.1977); Nolan v. Liuzza, 301 So.2d 892 (La.App. 4th Cir.1974).
We reject Stephens' argument that plaintiff suffered no damage because he purchased a new Mercedes shortly after his first vehicle was damaged. Plaintiff's ability to buy a new car does not diminish the annoyance of returning to the repair shop because of defendant's negligent repairs. Further, as noted in his reasons, the trial judge considered that plaintiff had purchased a replacement vehicle and later disposed of it when he anticipated the return of his earlier damaged car.
The $4,000.00 award is responsive to the protracted length of repair time and the repeated inconveniences suffered by plaintiff. Under these circumstances, we find no abuse of the trial judge's discretion.
Expert's Fee
In setting the sum of $1,000.00 as the cost of plaintiff's expert, the trial judge stated:
"The court finds that the Plaintiff's expert witness, Ken Miller, is entitled to a $1,000.00 expert fees for appearing and testifying on the Plaintiff's behalf for 2 full days. In arriving at this amount the court is sensitive to the fact he was present throughout the two days, testified and was ordered by the court to attend an inspection of the car on the Defendant's premises. The court does not include the $800.00 request [for videotape costs] in its award as it relates to expenses incurred in preparing for the lawsuit and are not recoverable as expert fees."
Stephens contends the expert fee is exorbitant and should be reduced to $500.00, particularly in light of the expert's testimony that he had only billed his client $900.00 for appearing at trial and inspecting the vehicle at the court's request. We disagree.
Expert fee awards are set by the court with consideration given to the value of time employed and the degree of learning or skill required. See LSA-R.S. 13:3666; Polites v. Millers Mutual Fire Ins. Co. of Texas, 267 So.2d 214 (La.App. 4th Cir.1972). Absent an abuse of discretion, we will not disturb the award. See Simoneaux v. Davis, 397 So.2d 835 (La. App. 4th Cir.1981); Kinnebrew v. Nelson Elec. Co., 397 So.2d 521 (La.App. 2nd Cir. 1981), writ denied 400 So.2d 670 (La.1981).
We find no abuse of the trial judge's discretion in our case, considering the expert's extensive testimony at trial, his demonstration of the video tape of his inspection of the car, and his further examination of the vehicle at the court's direction. Although the amount awarded exceeds the expert's charge to plaintiff, we decline to reduce the fee. An agreement between an expert and the party for whom he testifies is not the sole criterion in fixing the amount to be taxed as court costs for his services. See Comeaux v. Dairyland Ins. Co., 399 So.2d 802 (La.App. 3rd Cir. 1981).

ANSWER TO APPEAL
Before responding to plaintiff's request for increases, we turn to a consideration of defendant's motion to dismiss the answer to the appeal.
Citing LSA-C.C.P. Art. 2133, which requires that an appellee's answer be filed within 15 days after the lodging of the record, Stephens contends that Pike's answer filed on September 13, 1983 is untimely because the record was lodged on August 16, 1983. We disagree.
Plaintiff's answer to the appeal, though filed as a matter of record on September 13, 1983, had previously been submitted to this court in June, 1983 after plaintiff's attorneys had received notice that the order of appeal granted on May 27, 1983, was *745 returnable to the court of appeal on June 27, 1983. On June 17, 1983, the clerk of this court returned the answer to plaintiff's attorney because the record had not been lodged in this court. Although our clerk sent notice of the lodging of the appeal on August 16, the attorneys allege they received no further notice or information concerning Stephens' appeal until September, 1983, when they refiled their answer.
Under these circumstances, we conclude that the answer to the appeal is timely. Rule 2-13 of the Uniform Rules-Courts of Appeal provides that papers filed with the clerk "... shall be deemed timely when the papers are mailed on or before the due date." Because plaintiff's answer to the appeal was mailed to the court in June, 1983, two months prior to the lodging of the record, we conclude that it was timely filed. The refiling of the answer on September 13, 1983, relates back to the earlier filing. Accordingly, we deny Stephens' motion to dismiss.
Although we do not dismiss plaintiff's answer to the appeal, we find no merit to the argument that the awards are inadequate. For the reasons stated in our discussion of Stephens' appeal, we find the $4,000.00 award neither inadequate nor excessive. Finding no abuse in the trial judge's fixing of the expert's fee, we further deny plaintiff's request for an additional $800.00 for pre-trial preparation of the expert's video tape. These expenses incurred in preparing a lawsuit are not recoverable. Holden v. Clearview Dodge Sales, Inc., 416 So.2d 335 (La.App. 4th Cir. 1982); writs denied 421 So.2d 248 and 421 So.2d 249 (La.1982); Acme Steel Company v. A.J. Warehouse, Inc., 212 So.2d 271 (La. App. 4th Cir.1968).
Accordingly, the judgment is affirmed.
AFFIRMED.