519 So.2d 857 (1988)
Fred NUNEZ
v.
ST. BERNARD PARISH FIRE DEPARTMENT and Merit Insurance Company.
No. CA-7724.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1988.
*858 Susan F. Clade, Warren W. Wingerter, Jr., Simon, Peragine, Smith & Redfearn, New Orleans, for defendants/appellants.
John G. Lankford, Jerry B. Jordan, New Orleans, for plaintiff/appellee.
Before CIACCIO and LOBRANO, JJ., and HERBERT A. CADE, J. Pro Tem.
LOBRANO, Judge.
Plaintiff, Fred Nunez, filed this suit against the St. Bernard Parish Fire Department and its insurer, Merit Insurance Company, seeking damages for the loss of his home. He alleges that the Fire Department was negligent in responding to the fire and in fighting that fire. The Fire Department is a political subdivision, and thus plaintiff's claims against it were decided by the trial judge. La.R.S. 13:5107. The claims against Merit were decided by a jury.
The trial judge found that the Fire Department was negligent in responding to the fire and awarded plaintiff $61,700.00. The jury found Merit, as the Fire Department's insurer, responsible for the negligence of its insured, and awarded $21,500.00. That jury award was reduced by plaintiff's 10% failure to mitigate his damages. The Court entered judgment in accordance with the jury verdict.
*859 Merit and the Fire Department appeal asserting that the judgments are conflicting and therefore this Court should make a "de novo" review of the record which review would result in a judgment in their favor.
Alternatively, they also assert the excessiveness of the expert fees awarded.
Plaintiff answered the appeal seeking an increase in damages.
FACTS:
Nunez's home in Reggio, Louisiana caught fire on the morning of November 6, 1980 while he, his wife and their son were at the Veteran's hospital in New Orleans. Neighbors saw smoke rising from the house and called both the DelaCroix Island Fire Station, and the main dispatch for all of St. Bernard, located in Chalmette. The records at the main dispatch indicate their call was received at 9:27 a.m.
Although the apparent policy of the Fire Department was that all fires should be reported to main dispatch, the DelaCroix station was listed in the telephone book, and it was customary in the rural areas to call the nearest station. The DelaCroix station was estimated at only five to eight minutes from the location of the fire. At least one neighbor testified she called there several times before calling the main dispatch, but received no answer. These calls were made at approximately 8:45.
Central dispatch initially ordered Engine No. 9 from DelaCroix. When the dispatcher failed to make contact with No. 9, he dispatched No. 7 from Toca. District Chief Favalora arrived at the scene first. He testified he was surprised that Engine No. 9 was not there. Engine No. 7 then arrived within one minute of the chief.
The evidence confirms that the throttle was stuck on Engine No. 7, and therefore the firemen could not engage the pump. Favalora then ordered the Yscloskey Engine No. 8 to the scene. Subsequently, Engine No. 9, the DelaCroix truck, responded to dispatch that it was rolling. No. 8, from Yscloskey, was then rerouted to a grass fire. In the meantime, the firefighters from No. 7 were stretching hose, and an attempt was made to connect it directly to a fire hydrant, but the water pressure was not sufficient to control the fire. Engine No. 8 was then recalled from the grass fire, and finally Engine No. 9 arrived.
It was subsequently learned that Firefighter Anthony Gonzales was absent from his post at the DelaCroix station. Anthony Liccardi, the main dispatcher, testified he made at least three unsuccessful attempts at contacting that station. Procedure requires dispatching another engine after two unsuccessful attempts, which he did. However, it was also learned that when Engine No. 9 did respond that it was rolling, this response was false. The engine was in fact sitting on the engine house apron awaiting Gonzales' arrival. Gonzales was, in fact, at his brother's house drinking coffee. The result of this false information was the re-routing of No. 8 to a grass fire.
The fire was caused by the arcing of electrical wires in the attic of Nunez's home. The firemen approached the house from the rear where the fire was concentrated, and also attempted to enter through the front door. After entering the front door, a minor explosion occurred. However, the fire was ultimately brought under control, and was extinguished in about 30 minutes.
SCOPE OF REVIEW
Defendants argue that since the judgments are conflicting, this Court should disregard all findings and render a de novo judgment. In support of that position, defendants cite Aubert v. Charity Hospital, 363 So.2d 1223 (La.App.4th Cir.1978), writs refused 365 So.2d 242 and Williams v. City of New Orleans, 433 So.2d 1129 (La. App.4th Cir.1983), writ not considered 437 So.2d 1135. With respect to the liability portion of this case we disagree with defendants.
The jurisprudence cited by both plaintiff and defendants is abundantly clear that, in cases of this type, an appellate court should make its own independent factual findings without according any weight to *860 the judge or jury only when their findings are inconsistent.
In Aubert, supra, the judge found vicarious liability on the part of Charity because of its employees' negligence, whereas the jury found no negligence on the part of those same employees. Clearly, those findings were inconsistent, and required a de novo review.
In Williams, supra, the issue was not conflicting judgments, but whether both defendants should be liable in solido, a determination which was not made by either judge or jury.
Our brethren of the Third Circuit in Bishop v. Shelter Insurance Co., 461 So.2d 1170 (La.App. 3rd Cir.1984), writ denied 465 So.2d 737, correctly summarized the applicable scope of review for circumstances as presented in this case. They stated:
"It follows that since there is no conflict between the triers of fact, there is no need for the Court of Appeal to harmonize in accordance with the jurisprudence discussed above. It also follows that in our appellate review of the facts found by the jury and the facts found by the trial judge, the applicable rule will be the well established test of whether the trier of fact was clearly wrong." Id. at 1174.

In the case before us, the trial judge found the Fire Department negligent in responding to the fire. He reduced Nunez's property damage award by 10% reasoning that amount would have occurred without any negligence. The jury also found the Fire Department negligent, and rendered judgment against its insurer, Merit. That award was also reduced by 10% for plaintiff's failure to mitigate his damages.
Thus under both findings, the Fire Department and its insurer were held responsible for 90% of plaintiff's loss. We conclude these findings are consistent, and thus our review of liability will be guided by the "manifest error" or "clearly wrong" standard.
The question of quantum, however, is clearly conflicting. The trial judge awarded plaintiff $61,760.00, which included property loss (both real and personal), as well as mental anguish. The jury, however, awarded $19,350.00 representing only loss of real and personal property.
Citing Aubert, supra, Williams, supra and Rogers v. Calcasieu Parish Police Jury, 487 So.2d 190 (La.App.3rd Cir.1986), writ denied 489 So.2d 924, plaintiff argues that the jury verdict is invalid since it concluded the Fire Department negligent, a finding it had no authority to make, and thus we should not disturb the judge's damage award absent manifest error. We disagree with this argument, as those cases do not support that position, and are distinguishable.
In Rogers, supra, the jury went beyond what it was required to do, and made a finding that the defendant public body was responsible because of the acts of employees who were not named as defendants. Clearly, that finding was outside the scope of the jury's authority.
By way of supplemental brief, plaintiff also cites the recent First Circuit case of Dean v. Terrebonne Parish Police Jury, 510 So.2d 82 (La.App.1st Cir.1987). In that case the judge found the Terrebonne Parish Government free of fault, while the jury found it 78% at fault, thus rendering judgment against the insurer.
Our brethren of the First Circuit held that the jury did not have the authority to adjudicate any issues concerning the governmental agency and that they could only consider the independent fault of the insurer. We disagree with this reasoning. In cases of this nature, it is impossible for a jury to determine if the insurer is liable, without considering the fault of its insured. To conclude otherwise is to ignore the obvious reasons for an insurer's liability, i.e. the liability of its insured.
Although we question the wisdom of a bifurcated trial in cases involving a governmental entity, and its insurer, our supreme court has authorized this approach. Jones v. City of Kenner, 338 So. 2d 606 (La.1976). Following their reasoning, we conclude that the correct approach is when there is a conflicting finding between *861 judge and jury this court must make an independent evaluation of the record. We therefore, make such an evaluation with respect to quantum.
LIABILITY
The record substantiates the fact that there was delay in responding to the fire at Nunez's home. Although there is conflict in the evidence as to whether the neighbor attempted to contact the Dela-Croix station before main dispatch was alerted, the record amply supports the conclusion that the DelaCroix personnel did not timely respond to the orders of main dispatch, and most probably did not hear the neighbor's calls. The DelaCroix truck, being the closest to the fire, should have been first on the scene. It was not.
Further, to compound the problem, the DelaCroix response that "it was rolling", caused main dispatch to divert Engine No. 8, to a grass fire. The record also supports the finding that the DelaCroix truck's ultimate response was false because of the absence of one to its firefighters.
To add to the problems Engine No. 7 from Toca which had been called because of the unsuccessful attempts to contact the DelaCroix Engine, experienced mechanical difficulties when it arrived on the scene.
Although the record is not clear exactly how much time was lost in responding to the fire, the findings of the trial judge and jury that there was negligence in responding is well supported by the record.
The expert testimony is also conclusive that the fire was a slow developing fire. Electrical arcing requires burning of the wire insulation first, then sufficient heat is generated to burn the wood framing. Response time of the fire department is critical in preventing damages with this type of fire.
We therefore conclude there is no manifest error in the findings of judge and jury with respect to liability.
DAMAGES:
As previously noted, we make an independent review of the record to determine the amount of damages sustained by plaintiff.
a) Real property loss
Nunez's home was built in 1967, after Hurricane Betsy. He borrowed $13,000.00 from the Small Business Administration, $9,000.00 of which was used in construction costs and the remainder for contents. Four estimates of damages were presented at trial.
Mr. Harry Fabian, a contractor, estimated reconstruction costs approximately three months after the fire. He accurately described the necessary repairs, and based his estimate on January, 1981 prices. He determined it would cost $48,700.00 to restore the house to its pre-fire condition, and submitted a written proposal to Mr. Nunez to do the work. That estimate, however, included $4,500.00 for the cost of an air-conditioning system which the house did not have prior to the fire.
Real estate appraiser, Albert Eason, submitted an estimate of $32,700.00. This appraisal was done in 1986, but was predicated on the cost of repair in 1980. However, Eason is not a contractor. He testified that he knew someone who would do the work for that price.
A third estimate, done by an architectural firm, indicated damages to be $48,881.19. However, there is no testimony from the person preparing same, and we give it little weight.
A fourth estimate of $20,000.00 was prepared by Ronald Nunemacher, a Fire Marshall with the St. Bernard Fire Department. However, we question the credibility of this estimate because, originally Captain Melerine reported the house as a total loss of $75,000.00. Approximately three days later, however, it was reduced by Nunemacher to $20,000.00. He testified this was not unusual because the fire chief on the scene is usually sympathetic to the fire victim, and thus their estimates are inflated.
After review of the evidence we conclude that the estimate of Mr. Fabian most accurately shows the reconstruction costs. We also conclude that at least 10% of the damages *862 would have occurred even if there had been a prompt response to the fire, and it is reasonable to depreciate the costs by 10% since the house was approximately 13 years old.[1] We therefore summarize real property loss as follows:

Reconstruction costs $48,700.00
(Less Air Conditioner) 4,500.00
 __________
 Real Loss $44,200.00
(Less 10% for damages occurring
without any negligence) 4,420.00
 _________
 $39,820.00
(Less 10% depreciation) 3,982.00
 __________
Actual Real Property Loss $35,838.00

b) Personal property
Mr. and Mrs. Nunez, with their daughter's assistance, prepared an estimate of their loss of personal property. They itemized the contents of the house, gave their market value, age, and replacement value. The replacement cost is $20,550.00, and the market value at the time of the fire is $12,155.00.
The corrected estimate of the Fire Department shows a loss of $2,000.00.
Although Nunez's estimate may not be entirely accurate, there is no contradictory evidence to refute the values. We believe the homeowner is in a better position to itemize and evaluate the loss of his personal possessions.
However, we are convinced that Nunez made no attempt to salvage any personal items. Police jury employees were allowed to clean out their home and dispose of all personal items. Since the fire was concentrated in a rear bedroom, it is reasonable to assume that some items in other parts of the home could have been salvaged. We therefore award $12,155.00, less 10% for failure to mitigate or a net loss of $10,939.50.
c) Loss of use
When property can be adequately repaired, the measure of damages is the cost of restoration, plus the loss of use during the time reasonably necessary for the repairs. Ayala v. Bailey Electrical Co. Inc., 318 So.2d 645 (La.App.4th Cir. 1975); Chriss v. Manchester Insurance and Indemnity Co., 308 So.2d 803 (La. App.4th Cir.1975). "The normal measure of damages for loss of use is the rental value of similar property and perhaps necessary incidental expenses. It is not necessary, however, that a plaintiff actually rent substitute property in order to recover damages for loss of use." Chriss, supra 308 So.2d at 806.
The only evidence in the record on this issue is an estimate by a real estate appraiser that it would have cost Nunez $19,850.00 to rent similar property from November 10, 1980 to July 1, 1986, a period of 68 months, or $291.91 per month. Mr. Fabian, the contractor estimated he could reconstruct the house in four months. Allowing six months for construction, we conclude plaintiff is entitled to $1,751.46.
d) Mental Anguish and Inconvenience
Damages for emotional injury can be recovered, even without physical injury when "... a preponderance of the evidence establishes both the existence of such injury and its causal connection to the defendant's negligence." Chappetta v. Bowman Transportation, Inc., 415 So.2d 1019 (La. App.4th Cir.1982), at 1022.
Nunez and his wife lived with various relatives, and then on his boat until friends raised enough money for them to buy a trailer. They were still residing in the trailer at the time of trial. Nunez testified that he was "upset" and "felt bad" about his house burning.
Given the circumstances of this case, we are satisfied that $5,000.00 is proper for mental anguish, and inconvenience to plaintiff.
EXPERT WITNESS FEES:
The Fire Department argues that the post-trial award of $3,700.00 in expert witness fees is excessive and should be substantially reduced. Mr. Nunez, on the other hand, contends that he expended $9,753.83 for experts, and that he should be *863 awarded additional costs to cover his expenses. The trial court has the authority to determine the amount of fees for expert witnesses, and to tax these costs against the party cast in judgment. La.R.S. 13:3666. The determination of the fee to be paid on expert witnesses is within the discretion of the trial court. Jimco, Inc. v. Bon Marche Homes, Inc., 471 So.2d 312 (La.App. 4th Cir.1985). Absent an abuse of that discretion we will not disturb the award. Pike v. Stephens Imports, Inc., 448 So.2d 738 (La.App. 4th Cir.1984).
The record contains the statement Mr. Nunez received from his expert witnesses. But the agreement between an expert and the party for whom he testifies is not the sole criterion in fixing the amount to be taxed as court costs for his services. Pike, 448 So.2d at 744. Expert witnesses are entitled only to reasonable compensation. Missouri Pacific Railroad Co. v. Nicholson, 460 So.2d 615 (La.App. 1st Cir.1984). While there is a discrepancy between the amount claimed for expert witness fees by Mr. Nunez, and the court's award, we do not find that the court abused its discretion in making that award. Therefore, the award of expert witness fees will remain at $3,700.00.
FRIVOLOUS APPEAL
In answering this appeal, Nunez seeks damages for frivolous appeal in accordance with Code of Civil Procedure Article 2164.
"Before damages for a frivolous appeal lie, it must be manifest that the appeal was taken solely for delay or that appealing counsel does not sincerely believe in the view of law he advocates." Sherman v. B & G Crane Service, 455 So.2d 1275 (La.App. 4th Cir.1984) at 1278.
There is no evidence to substantiate a claim for frivolous appeal in this case. There are both legal and factual issues raised, in good faith, by both defendants. We therefore reject plaintiff's claim of frivolous appeal.
DECREE
In accordance with the reasons expressed herein, we render judgment in favor of plaintiff and against both defendants, in solido, in the following amounts:

Real property loss $35,838.00
Personal property loss 10,939.50
Loss of use 1,751.46
Mental anguish and inconvenience 5,000.00
 __________
Total award $53,528.96

We also affirm the trial court's award of expert fees and costs. Each party to bear his own costs of this appeal.
AMENDED, AND AS AMENDED AFFIRMED.
NOTES
[1] The depreciation factor was explained by appraiser Eason. He testified the effective age of the house, assuming the owner had adequately maintained it, was 5 years. Based on a 2% depreciation factor per year, he arrived at 10%.