479 So.2d 23 (1985)
Joseph A. GAGLIANO, Jr.
v.
Ray NAMIAS, Jr., d/b/a Ray's Collision Shop.
No. CA-3370.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1985.
*24 Sidney D. Torres, III, Michael J. Furman, Law Offices of Sidney D. Torres, III, Chalmette, for plaintiff-appellant.
Paul A. Tabary, III, Fernandez & Dysart, Chalmette, for defendant-appellee.
Before REDMANN, C.J., and BARRY and LOBRANO, JJ.
BARRY, Judge.
Plaintiff sued the defendant body and fender shop alleging incompetent workmanship and fraudulent representations. The trial court found no breach of contract and plaintiff appeals. We reverse.
Plaintiff was in an automobile accident on September 6, 1981. His Aetna Insurance Company's estimate on September 14, 1981 included replacement of various parts. Two weeks later defendant's shop supervisor, Charles Gambino, prepared an estimate which substituted a number of replacement parts for repairs which resulted in a substantial increase for labor. Plaintiff said he first saw defendant's estimate when he picked up the car in January, 1982. His signature on the estimate was misspelled and an apparent forgery. The shop's owner, Ray Namias, testified plaintiff appeared intoxicated when he signed the estimate, but admitted the signature was different from others in the record. Gambino quit his job and did not testify.
Plaintiff testified he knew nothing of Aetna's estimate until after he picked up his car in January, 1982. He was not told by Namias or Gambino that "R & R" on defendant's estimate meant "removing and repairing," or that some parts would be repaired instead of replaced. Plaintiff claims he was told the four month delay was caused by a wait for parts.
Namias counters that plaintiff agreed that Aetna estimate would be changed and repairs made if new parts were unavailable. However, Namias did not testify that parts were unavailable except for a rack and pinion gear.
Plaintiff began to experience problems and had Benson Volkswagen make an appraisal on January 27, 1982 which revealed: the car pulled to the left; a scraping noise when turning left; both "A" frames were bent; the motor and motor mounts were out of alignment; the car needed to be checked on a frame machine.
Plaintiff took the automobile back to defendant with numerous complaints ranging from steering problems to door leaks. He picked the car up on February 18, 1982 and said that on March 31st the drive shaft came out of a wheel and "scared the daylights" out of him. Defendant ordered the part and on May 17th sent the car to Dick's Front End Shop for replacement of the joint and a front end alignment. The owner, Joseph Kiely, testified he disassembled incorrectly seated bearings and put them in the proper place and aligned the front end. Kiely said the problems cited by Tufaro would have rendered the vehicle almost impossible to drive.
The car remained at defendant's shop until July 16. Plaintiff decided to trade the car and during a test drive by a Gene Ducote Volkswagen employee the radiator exploded. Plaintiff had the car towed home and never used it since.
On January 21, 1983 the vehicle was towed to Custom Body Shop. Peter Tufaro, the owner, an expert in front end alignment and body fender repair, said the car had a bent frame, could not be aligned, and was unsafe to drive. He stated fifteen parts designated by Aetna for replacement had been "very poorly repaired" by defendant. Tufaro clearly stated defendant's work was poor. He testified from the Mitchell Manual that "R & R" means "remove and replace."
*25 A contract for work or service carries an implied obligation on the contractor to perform in a workmanlike manner in default of which he must respond in damages for the losses that may ensue. La. C.C. Arts. 1930 (pre-1984 Acts) and 2769; Rogers v. Nelson Dodge, Inc., 407 So.2d 443 (La.App. 3rd Cir.1981). There must be some showing of want of skill, efficiency or knowledge or some lack of ordinary care in the performance of the work or in the selection of suitable equipment or materials. Tiger Well Service, Inc. v. Kimball Production Company, 343 So.2d 1153 (La. App. 3rd Cir.1977).
We find clear evidence that plaintiff's 1980 Volkswagen was unsafe to drive and useless because of faulty workmanship. We are also satisfied that defendant's estimate, i.e., increasing labor costs through repairs rather than replacement, constitutes fraud under these facts. It was manifest error to dismiss plaintiff's suit.
Three tests have been utilized to determine property damage: 1) if the damaged object can be adequately repaired, the cost of restoration; 2) the difference in the value of the property before and after the damage; 3) if the value prior to and subsequent to the damage cannot be determined or if the cost of repairs exceeds the value of thing damaged, damages should be the replacement cost less depreciation. Decuir v. Sam Broussard, Inc., 459 So.2d 1375 (La.App. 3rd Cir.1984) citing Roshong v. Travelers Insurance Company, 281 So.2d 785 (La.App. 3rd Cir.1973).
Although no exact amount was mentioned to restore, Tufaro said he could make the repairs based on Aetna's estimate, minus the cost of new parts provided by defendant, plus additional part increases. That computes to approximately $3,600.00.
Our court has allowed recovery for real and substantial emotional distress or inconvenience that was sufficiently proven in breach of contract cases relating to faulty workmanship. Ducote v. Arnold, 416 So.2d 180 (La.App. 4th Cir.1982), writ denied 421 So.2d 238 (La.1982); Coddington v. Stephens Imports, Inc., 383 So.2d 416 (La.App. 4th Cir.1980). In Pike v. Stephens Imports, Inc., 448 So.2d 738, 743 (La.App. 4th Cir.1984), we held that a plaintiff "may recover damages for inconvenience, loss of use, aggravation, delay and mental anguish for negligent breach of a repair contract, irrespective of the intellectual or physical nature of the contract's principal object."
Plaintiff could not use his car for over 4 months, then 2 weeks, then almost 2 months, and finally the car was inoperable. He had to "bum" rides to work and use rental cars. Under these facts there were inordinate inconveniences and obvious aggravation. We award $1,500.00 to compensate for such distress.
The trial court judgment is reversed. Judgment is in favor of plaintiff for $5,100.00 plus all costs.
REVERSED.