MOORE, J.
_jjK & J Refrigeration (“K & J”) filed a suit on open account for $722.49 plus attorney fees against Loraine Bowman, d/b/a Tasty Fried Chicken in Grambling, Louisiana. Ms. Bowman answered the petition by denying she owed the debt and filed a reconventional demand claiming that, due to plaintiffs poor workmanship, she suffered approximately $34,000 in damages that included lost business, lost cooking shortening from a leaking cooker used to fry chicken, and damage to the floor of the premises. After trial, the court denied K & J recovery on open account and awarded Ms. Bowman $14,250 in damages. K & J filed this appeal. For the reasons that follow, we reverse the judgment of the trial court dismissing the suit on open account and render judgment for K & J Refrigeration. We also reverse the damage award in favor of Loraine Bowman d/b/a Tasty Fried Chicken.
Facts
Kenneth Naul and his son, Jeffery (“K & J”) operate a repair service out of Monroe, Louisiana. They are authorized to work on Frymaster systems of the kind owned and operated by Ms. Bowman’s chicken restaurant. The elder Naul worked for Burger King for 18 years as a service technician for cooking equipment. Ms. Bowman is the sole proprietor of her fried chicken business in Grambling, Louisiana, known as Tasty Fried Chicken.
The dispute between the parties in this instance involves a Frymaster two or three-vat fryer system in Ms. Bowman’s restaurant.[1] According to K & J, Ms. Bowman initially contacted K & J in October of 1998 regarding a 12hood on one of the fryers, which K & J repaired. At that time, Ms. Bowman also asked K & J to *1143 check on a leaking fryer. K & J discovered that one of the vats, specifically, the vat on the left, had ruptured. K & J replaced the vat on November 6, 1998, and Ms. Bowman paid the bill. Ms. Bowman testified that despite the vat being replaced, the fryer on the left continued to leak. Additionally, she said that it began to smoke. She testified that K & J told her the smoking was due to cooking oil dripping on the cooker and that the leaking was because the hoses had become brittle.
Some 20 months after K & J replaced the vat, Ms. Bowman contacted K & J again in July of 2000 regarding problems she had controlling the temperature on the vat on the left. She said the problem was causing her to burn her chicken.
K & J made what appeared to be two service calls to replace the thermostat and hoses, as evidenced by an invoice dated July 7, 2000. According to K & J, while Jeff Naul was at Tasty Fried Chicken, he observed one of Ms. Bowman’s employees improperly placing a 50-lb. block of shortening into a fryer vat and turning on the heat. Ms. Bowman admitted at trial that K & J had informed her about this. According to K & J, the shortening must be packed into the fryer before the heat is turned on; otherwise, he said, the vat is subject to rupture. Jeff Naul stated that despite his warning, when he returned to the restaurant on a subsequent service call, one of Ms. Bowman’s employees was still using the incorrect procedure he previously observed. He also observed at that time that the other vat on the right was now ruptured and he so informed Ms. Bowman. He stated that |sMs. Bowman eventually hired another service repair company to bypass the ruptured vat. Mr. Naul also stated that he replaced the thermostat on the right cooker, not the left cooker as Ms. Bowman contends.
Ms. Bowman refused to pay the invoice for the work replacing the thermostat and hoses. K & J presented an invoice and testimony regarding its service calls to Tasty Fried Chicken, including an invoice for the $722.49 bill not paid by Ms. Bowman. The itemized charges for the invoice are $113.00 for two hours labor; $210.49 for a thermostat, $78.00 for three drain hoses; and $280 for 160 miles travel time and mileage; and $10.68 in finance charges.
Ms. Bowman testified that the system never stopped leaking, and, in fact, worsened after the 1998 service call when K & J replaced the vat. She testified that she lost approximately four or five blocks (50 lbs. each) of shortening each week due to the leak at a cost of $20-$23 per block. She stated that she lost between $18,000 to $19,000 over a two and one-half year period. Despite these losses, she did not get the leak fixed for another two and one-half years, when she paid Banner Commercial Kitchen Parts (“Banner”)[2] to bypass the leaking vat for $164.96. Her stated reason for waiting so long to fix the leak was that she feared she would lose her warranty if she did not use a Frymaster-authorized service company, and K & J was the only one in the area. She stated that she called K & J and Frymaster about the problems but they did not fix them. She submitted no documentary evidence of Frymaster’s warranty requirements, nor letters or | ¿telephone records to support either of these claims, both of which are disputed by K& J.
In addition to the worsening leaking problem, Ms. Bowman testified that K & J’s poor workmanship caused her to burn her chicken and the vats to smoke. She said K & J came back and told her that it was not the vat that was leaking, but the cooker itself, and the smoking was caused *1144 by oil dripping but it would eventually burn off. She said that it would, in fact, burn itself off; however, the next time the oil was filtered, the smoking problem would start the problem again.
Ms. Bowman said that the third time K & J came out, they said that the hoses needed to be replaced because they had become brittle. She was also informed that the frying vat on the right was ruptured. She attributed the problems with the cooker on the right to K & J’s work on the vat on the left. The hoses were repaired, but Ms. Bowman stated that the leaking still did not stop from the vat system on the left, so she refused to pay the bill.
In addition to the lost cooking oil, Ms. Bowman contends that she had to replace her floor tile at a cost of $1601.35. She admitted that this bill was for replacing the entire floor in the restaurant. Kenneth and Jeffrey Naul contend that the floor around the cooker was in the condition of disrepair Ms. Bowman claims they caused when they initially made a service call. Finally, Ms. Bowman claims she lost business due to her inability to control the temperature of the cooking oil. In particular, she recalled that she could not serve a wedding party, and another customer told her that the chicken tasted bad.
IfiMs. Bowman produced at trial an invoice dated July 16, 2001, from Banner for $164.96. She stated that Banner fixed the leaking problem which was allegedly solved by putting gaskets on the hose connections, and told her that the Banner service man stated that K & J had replaced the hoses but not the gaskets. The Nauls testified that the gaskets replaced by Banner had nothing to do with the hoses, and were in fact, part of the drainage system on the pressure side of the cooker.
Ms. Bowman testified that she continued to have problems with the cooker on the right and that it would cost her more to repair the cooker than to simply purchase a new one. On Banner’s recommendation, Ms. Bowman called Deluxe Refrigeration (“Deluxe”), another service and repair firm, to disconnect the cooker on the right which was apparently still leaking. Mr. Tommy Theotis of Deluxe cut the dual cooker in half and bypassed the hoses leading to the filtration system of the cooker on the right. Mr. Theotis was initially present in the courtroom to testify at Ms. Bowman’s request, but he left the courtroom and did not testify. Ms. Bowman denied that Mr. Theotis did not testify because he would contradict her story, but because Mr. Theotis did not remember what she said he had told her.
After disconnecting the cooker on the right, Ms. Bowman stated that she continued to have thermostat problems with the cooker on the left, so she purchased a new single cooker replacing the disconnected cooker on the right. Now Ms. Bowman said they use only the one frying vat on the right.
One of Ms. Bowman’s employees, Nobie Scott, testified that the fryers were leaking and smoking and the situation worsened after K & J made | ¡^service calls. She did not know exactly what service work K & J performed, but knew K & J had replaced a frying vat. She admitted she never packed or cut up the blocks of shortening when preparing the vat for frying, but simply put the block of shortening in the vat and turned the heat on.
Ms. Scott was unable to recall the amount of time that elapsed between the service call when K & J replaced the vat and the subsequent service call when K & J replaced a thermostat. She also did not know which frying vat in which K & J replaced the thermostat. She stated that eventually they quit using the frying vat on the right. She stated that there were two frying vats for frying chicken, and she *1145 stated that the fryer on the left was the one that was leaking even after K & J’s repairs.
K & J disputed many of the contentions made by Ms. Bowman. Essentially, it contends that Ms. Bowman confused the leaking problems with the vat on the right with the vat on the left which it repaired. K & J said that the vat on the left continued to leak because the hoses needed to be replaced, which they eventually did. K & J stated that when it replaced the thermostat, it calibrated the dials on which the numbers to gauge the temperature had been worn away by placing a mark denoting 350 degrees on the dials. At the time it replaced the thermostat, K & J contends that the vat on the right was leaking because it had ruptured due to the improper practices in heating the shortening used by the restaurant.
K & J also disputed Ms. Bowman’s claim that it was the only service representative in the area for Frymaster. In fact, it contended that it had to work through Banner to get the Frymaster cooking vat and to return the 17ruptured vat.
The trial court denied K & J recovery of the $722.49 and its attorney fees, and it also found that K & J was negligent in making repairs. The court awarded Ms. Bowman $14,250 in damages, although it did not specify what damages that amount covered.
K & J filed this appeal raising eight assignments of error in the trial court findings, including the findings that Ms. Bowman was not indebted to K & J due to substandard work or negligence, and in the damage awards. Additionally, it alleges that the trial court erred in not finding that Ms. Bowman’s claim for damages had prescribed.
Discussion
Although the judgment of August 6 and the amended judgment of August 15, 2005 incorporated by reference into the final judgment of September 16 recounts the history of the dispute between Ms. Bowman and K & J, the court rendered no findings of fact, only legal conclusions. Nevertheless, we must give deference to the trier-of-fact under the manifest error standard for any facts in the record which reasonably support the finding of liability. Bolton v. Louisiana State Univ. Medical Ctr., 601 So.2d 677 (La.App. 2 Cir.1992).
A contract for work or service carries an implied obligation on the contractor to perform in a workmanlike manner, in default of which the obligor must respond in damages for the losses that may ensue. La. C.C. arts.1994 and 2769; Platt v. Interstate Dodge, 37,059 (La.App. 2 Cir. 4/9/03), 843 So.2d 1178; Gagliano v. Namias, 479 So.2d 23, 25 (La.App. 4 Cir.1985); Rogers v. Nelson Dodge, Inc., 407 So.2d 443 (La.App. 3 Cir.1981). In addition to contractual liability, this court has recognized that the obligor’s actions can also be considered as giving rise to a tort for the want of skill. Platt v. Interstate Dodge, supra; Moore v. McCullough, 573 So.2d 598 (LaApp. 2 Cir.1991); La. C.C. arts. 2315 and 2316. There must be some showing of want of skill, efficiency or knowledge or some lack of ordinary care in the performance of the work or in the selection of suitable equipment or materials. Platt v. Interstate Dodge, supra; Gagliano, supra.
In response to K & J’s petition on open account, Ms. Bowman denied the debt and filed a reconventional demand claiming that K & J’s repair work, including the work for the unpaid invoice, caused her damages. She contends that K & J’s repairs did not resolve the leaking problem and made matters worse by causing the cookers to smoke and burn her chicken. A plea that repairs are defective or unsatisfactory is an affirmative defense, and a litigant so pleading bears the burden of *1146 proving that defense by a preponderance of the evidence. La. C.C.P. art. 1005; Bohn Ford, Inc. v. Lanza, 347 So.2d 935 (La.App. 4 Cir.1977) (Citations omitted).
Our review of this record indicates that Ms. Bowman was having several problems with the cookers, including the oil leakage, smoking and the inability to control or gauge the temperature of the cooking oil. Ms. Bowman argued that all of these problems and resulting damages were causally related to the repair work performed by K & J. The question for this court, then, is whether the trial court’s conclusion that Ms. Bowman carried her burden of proof that K & J’s repairs were defective was manifestly | flerroneous.
After reviewing the record, we conclude that the trial court manifestly erred in finding that Ms. Bowman carried her burden of proof by a preponderance of the evidence that the repairs performed by K & J were defective. Ms. Bowman did not produce any evidence or independent testimony that the work performed by K & J, namely replacing the thermostat and hoses, was substandard or unnecessary. Although Ms. Bowman believed that leak problems were worsened by the work performed by K & J, there is no evidence other than her own testimony and her employee, Ms. Scott, that over time the leaks worsened, and at times, the fryers smoked and they had difficulty gauging the temperature of the cooking oil. There is no evidence that the leaks, smoking or temperature problems had anything to do with the thermostat that was replaced or the hoses that were replaced. Importantly, Ms. Bowman testified that she did not know whether the thermostat and hoses were replaced for the fryer on the left or right. Although her testimony is somewhat confusing, it is clear that the initial leakage was from the vat on the left, which K & J replaced, but the subsequent leakage occurred elsewhere, either from the vat on the right, which she admitted K & J told her was busted and leaking, or from other connections between the vats and the pump and filtration system. It was also clear from testimony that the numbers on the temperature dials on the fryers were completely worn away, so that K & J had to put a mark or piece of tape on the dial to indicate the proper frying temperature.
| inThe only evidence that Ms. Bowman presented that could have been related to replacement of the hoses is her testimony that Banner fixed the leak by putting gaskets on the hoses. However, her testimony was soundly rebutted by Jeffrey Naul, who explained that the gaskets that Banner replaced were completely unrelated to the hoses he replaced and had to do with gaskets on the pressure side of the drain above the pump.
Jeffrey Naul testified that he replaced the thermostat on the fryer on the right. He acknowledged that Ms. Bowman was still complaining about cooking oil leakage, and he informed her at that time that the vat on the right was now busted. He opined that the reason the vat busted was the defendant’s continued improper practice of heating the solid shortening without packing the vat so that the heat could be dissipated evenly. Regarding the hoses, he said that when they replaced the vat, the circulating pump hoses were stiff or brittle and needed to be replaced as a part of routine maintenance.
There was no independent expert opinion testimony presented in this case, however, as to the actual cause or causes of the oil leakage, smoking and temperature control problems in the cooker that resulted from substandard work by K & J. The only evidence in support of Ms. Bowman’s contention that the repair work was defective is the testimony of Ms. Bowman herself that the repair work by K & J did not solve the problems she was having with *1147 the cooker, but made them worse, and this was corroborated to some extent by one of her employees, Nobie Scott, whose testimony simply repeated that the cooker had smoking, leaking and Intemperature control problems.
In Bohn Ford, Inc. v. Lanza, supra, the Fourth Circuit reversed the trial court and upheld the plaintiffs suit on open account for automobile repairs it performed where the only evidence in the record relative to the defendant’s affirmative defense that the repairs to her automobile were defective was the testimony of the defendant herself that the car was in worse shape when returned after the first repair and still in bad shape after the second; it continued to have rattling noises in the motor, bucked and “didn’t run right.” Id. at 936. She subsequently brought the vehicle to another mechanic who did the repair work; however, she did not know what kind of repair work he had done. The court concluded that the evidence was not competent to prove the affirmative defense against the debt.
In Ray v. Martin, 117 So.2d 839 (La.App.Orleans 1960), the defendant refused to pay his plumber’s bill for repairs to his water pipe system claiming that the work was defective. In holding that the defendant failed to produce competent evidence to prove the affirmative defense, the court observed:
Defendant neither introduced expert testimony to establish poor workmanship nor did he subpoena a representative of the Sewerage & Water Board to verify noncompliance with its rules and regulations. He more pertinently failed to support his statement of employing another plumber to correct the defective work by having the plumber appear on his behalf herein, or by the introduction into the record of any other corroborative evidence.
Similarly, in this instance, the only proof in support of Ms. Bowman’s affirmative defense against payment of the invoice in question is her own lay testimony and that of Ms. Scott, neither of whom demonstrated any | ^knowledge of the system under repair, much less testified how the repair work done by K & J was defective. Nor is there evidence in this record from Banner or Deluxe to show that K & J’s work was defective or caused the problems in the cookers. The cooking system in her restaurant no doubt leaked cooking oil, smoked and caused other problems. Her frustration over the failure of K & J’s specific repair work to solve the leaking problem is understandable. Nevertheless, our law requires that this defense be substantiated with competent evidence.
For these reasons, we hold that the trial court manifestly erred in finding that Ms. Bowman proved by a preponderance of the evidence her affirmative defense against the open account debt for the repairs made by K & J. Accordingly, we reverse the judgment of the trial court dismissing K & J’s suit on open account and render judgment for K & J Refrigeration for $722.49, together with legal interest on the principal sum from the date payment was due, plus attorney fees in the amount of $1562.50.[3]

The Reconventional Demand

For the same reasons, we also reverse the judgment of the trial court awarding damages for allegedly negligent work by K & J. The evidence to support Ms. Bowman’s claim of negligence in this record is based solely upon her testimony which fails to establish a causal relationship between the work performed by K & *1148 J Refrigeration and the damages she suffered due to leakage, smoking and temperature gauging. K & J did not cause the ruptured vat on the left that was causing the leak repaired in 1998, the leaking hoses, [iaor the faulty thermostat, nor did it cause the ruptured vat on the right about which Ms. Bowman acknowledged she was informed in July of 2000. Although Ms. Bowman complains that the leaks continued or worsened on the left side cooker after the left vat was replaced, she apparently waited 20 months before calling K & J again. She testified that K & J would not come to her restaurant unless they had other work in the area, and her warranty would not permit her to use any other service provider; however, she did not produce a copy of the warranty, nor competent testimony to prove this point, which was contested by K & J. She stated that she contacted Frymaster about the problem, but did not obtain permission to use another repair service until 2001 when she contacted Banner and Deluxe. All of these facts alleged are uncorroborated and contradicted by K & J in many instances.
Regarding the alleged damages, Ms. Bowman could not state how much the leaks allegedly worsened after K & J performed the initial repair for the leaking, ruptured vat, nor could she specify how much of the leaking came from the right side of the system. She testified that she was purchasing four to five extra blocks of cooking shortening per week, but she presented no documentary evidence to corroborate this claim nor did she present any documentary evidence of the cost of the shortening, although this latter fact was not contested. Ms. Bowman failed to show that the thermostats were installed improperly or the dials incorrectly calibrated so as to burn chicken, and there was no testimony that K <& J had improperly installed the thermostat or improperly calibrated the gauges to correct the 114problem.
Finally, we note that K & J contends that Ms. Bowman’s reconventional demand has prescribed. Ms. Bowman alleges that she began to incur damages due to K & J’s negligence in November of 1998 when K & J replaced the left side vat. Since the reconventional demand was not filed until March 16, 2001, the claim has arguably prescribed. La. G.C. art. 3482 and 3493; Cf La. C.C.P. art. 424. Because we hold that Ms. Bowman did not prove her claim that K & J was negligent or that its woi'k was defective, we pretermit any determination of whether K & J’s prescription argument has merit.
Conclusion
For the foregoing reasons, we reverse in its entirety the judgment of the trial court denying Ms. Bowman’s indebtedness to K & J Refrigeration and awarding her damages. We render judgment in favor of K & J Refrigeration for $722.49, together with legal interest on the principal sum from the date payment was due, plus attorney fees in the amount of $1562.50. Ms. Bowman is cast in judgment for the costs of this appeal.
REVERSED AND RENDERED.

. There is some question whether the system contained two or three fryer vats; however, the testimony is fairly consistent that only two vats were used for frying chicken.

. The record is inconsistent whether the company name is “Banner” or "Bana”.

. This amount is based upon the affidavit of plaintiff’s attorney for the suit on open account in the record.