986 So.2d 901 (2008)
Donald L. BROWN, Plaintiff-Appellant
v.
BRIAN RILEY BAR TRANSPORT, LLC, Defendant-Appellee.
No. 43,326-CA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 2008.
*902 Kammer & Huckabay, Ltd. (A.P.L.C.), by Charles H. Kammer, III, Shreveport, for Plaintiff-Appellant.
J. Ransdell Keene, for Defendant-Appellee.
Before GASKINS, CARAWAY and DREW, JJ.
GASKINS, J.
In this suit involving the repair of an 18-wheeler truck, the plaintiff appeals from a trial court judgment rejecting its demands against the defendant truck owner and granting the defendant's reconventional demands. We affirm.

FACTS
Bar Transport, LLC ("Bar T"), an automobile transportation business which operates tractor trucks, owned a used 1995 Peterbilt 18-wheeler truck with a Caterpillar engine. In early 2006, the truck underwent a complete engine rebuild.
In May 2006, the truck required some repairs while Bar T's in-house mechanic was unavailable. Bar T contacted Bayou Truck Specialist, Inc. ("Bayou"). Donald Brown, Bayou's owner and president, came to Bar T's shop and performed the needed repairs. His work was satisfactory, and the repair bill for $921.91 was paid by Bar T.
In August 2006, the driver of this particular truck complained of low power. The truck was taken to the local Peterbilt service center, where it was diagnosed as having a worn-out injection or fuel pump which needed to be rebuilt or replaced. Due to the expense and time involved in such repairs, the operator of Bar T, Brian Riley, decided to buy a used pump to allow the truck to continue running while a decision was made as to repair or rebuild the fuel pump. Ben Deaton, Bar T's shop hand, was tasked with finding a used pump.
Deaton contacted Bayou and purchased one of the two such pumps it offered for $450.00. Deaton bolted it on the truck. There were immediate problems; the truck did not run properly and fuel leaked. Deaton contacted Brown to either find out *903 if another pump was available or get Bar T's money back. Brown said he could repair the pump that he sold to Bar T. Deaton took the pump back to Brown; it was subsequently returned to Bar T. Deaton reinstalled the used pump on the truck; while it no longer leaked fuel, the truck still did not run properly. Deaton again called Brown, who said to bring the vehicle to him.
The truck, which had not been in service since the Peterbilt diagnosis, was driven the four miles to Bayou's shop on September 11, 2006. A few days later, on or about September 15, Brown called to say they could pick it up. Bayou charged Bar T $325.00 for these repairs[1]; the invoice indicates that the fuel pump was removed and reinstalled. Although Bar T picked up the truck, it was returned almost immediately because it still was not operating properly. At this time, Brown found a crack in the cylinder head. Bayou billed Bar T for $995.88; while Bar T wrote a check for this amount, it later placed a stop payment order on the check.
Bar T employees picked up the truck and took it to Peterbilt on October 5, 2006. Peterbilt diagnosed a cracked cylinder head. In the opinion of the Peterbilt service manager, Mark Tucker, the fuel pump caused the cracked cylinder head. He opined that the fuel pump installed was not for that sort of engine; also, the settings on the fuel pump were about double what they should have been. Peterbilt performed basically a complete engine overhaul; in Tucker's opinion, the fuel pump could have caused all that was repaired. The repairs performed on the truck by Peterbilt totaled $14,844.21.
In October 2006, Brown and Bayou filed suit against Riley and Bar T, in the Small Claims Division of Bossier City Court, as a result of the stop payment on the $995.88 check. On his claim statement, Brown requested a total of $1,153.38 (the amount of the check, plus $97.50 for 1.5 hours of lost wages and $90.00 for "Bal. Ck."). The matter was transferred to the regular civil docket of Bossier City Court.
On November 17, 2006, the defendants answered, alleging that the plaintiff represented an ability to make the requested repairs, the repairs were not made, and, as a result, the defendants' truck was damaged and loss of use ensued. Bar T then reconvened, alleging that it purchased a rebuilt fuel pump from Bayou and Brown; however, the fuel pump was not proper for the engine and resulted in extensive damages to the vehicle. As a result, Bar T had to have the truck engine repaired and rebuilt by Peterbilt at a cost of $14,844.21. Bar T requested damages for the repair costs and the loss of revenue from the truck being out of service.
Brown and Bayou (now represented by counsel) amended their claim to request attorney fees, court costs and expert fees. A general denial to the reconventional demand was filed. Bar T filed a general denial to the amended claim.
The case was tried on May 9, 2007. Brown testified on behalf of Bayou. Bar T presented the testimony of Riley, Deaton, and David Barons, the general manager of Bar T. Also testifying was Tucker, the service manager of Peterbilt of Shreveport.
The matter was taken under advisement. On July 9, 2007, the trial court issued written reasons for decision. At the outset, it noted that the proper parties are Bar Transport, LLC, and Bayou Truck Specialist, Inc., and that the individual parties had been dismissed. The court recounted the pertinent facts, including that *904 the truck involved here is a Peterbilt truck, the original engine of which had been replaced with a Caterpillar engine. The court also noted that the work performed by Bayou in May 2006 was unrelated to the instant suit but allowed it to become familiar with the vehicle. In reviewing Bayou's repair attempts, the court observed that at the time of the mid-September work, Bayou did not diagnose a cracked cylinder head. This diagnosis was made after it was returned following those repairs. Bar T then took the truck to Peterbilt, which found a cracked cylinder head and settings on the fuel pump that were approximately double what they should have been. According to Peterbilt, running an engine even a short distance with such a high setting could result in overheating that would cause cylinder heads to crack.
Based upon these findings of fact, the trial court concluded that the cracked cylinder in the truck was caused by the "extremely high setting" on the fuel pump which was set by Bayou. The court emphasized that the truck was not returned to service at the critical times in question. It held that Bayou breached its duty to exercise due and reasonable care in the repair of the truck and the setting of the fuel pump. This breach caused the $14,884.21 engine damage. Since the amount for that damage and the resulting loss of use exceeded the jurisdictional limit of the city court, the court set damages at $15,000, plus interest and costs.
On August 14, 2007, the trial court signed a judgment in conformity with its written opinion.
Bayou appeals.

LAW
An appellate court may not set aside a trial court's finding of fact unless it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly wrong. Rosell, supra; Cole v. State Department of Public Safety and Corrections, 2001-2123 (La.9/4/02), 825 So.2d 1134. Where the fact finder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra.
A contract for work or service carries an implied obligation on the contractor to perform in a workmanlike manner, in default of which he must respond in damages for the losses that may ensue. La. C.C. arts. 1994 and 2769; Gagliano v. Namias, 479 So.2d 23, 25 (La.App. 4th Cir.1985); Rogers v. Nelson Dodge, Inc., 407 So.2d 443 (La.App. 3d Cir.1981). In addition to contractual liability, this court has recognized that the contractor's actions can also be considered as giving rise to a tort for the want of skill. Moore v. McCullough, 573 So.2d 598 (La.App. 2d Cir.1991); Platt v. Interstate Dodge, 37,059 (La.App. 2d Cir.4/9/03), 843 So.2d 1178. There must be some showing of want of skill, efficiency or knowledge or some lack of ordinary care in the performance of the work or in the selection of suitable equipment or materials. Gagliano, supra.

*905 DISCUSSION
In the instant case, the trial court was presented with contradictory testimony. In particular, Brown's testimony was contrary to that of Bar T's witnesses on several issues, including his knowledge of the suitability of the fuel pump he sold to Bar T, its settings, and his adjustment of the pump's settings. Particularly problematic was Brown's failure to recall working on the truck's fuel system on or about September 15, 2006; however, he was confronted with a bill sent by Bayou to Bar T which stated "Check fuel system and adjust fuel pump time line/R & R Fuel Pump."[2] Brown also testified that he knew that the fuel pump was going to "run hot" when he saw it on the truck. He indicated that it was the wrong type for the engine and that he warned Deaton. However, he then admitted that he did not tell Deaton to remove it. Later in his testimony he conceded that he "really did not warn [Deaton]." Deaton testified that Brown never told him that the fuel pump he purchased from Bayou would not work properly on that engine and that he only bought it because of Brown's guarantee that it would work.
The trial court resolved all of the credibility issues in favor of Bar T and against Bayou. As the trier of fact, the trial court was in the best position to evaluate credibility. The evidence demonstrated that Bayou breached its implied obligation to perform its work on Bar T's truck in a workmanlike manner. Its failure in this respect ultimately caused the cracked cylinder head and resulted in the need for extensive repairs. It also caused the truck to be out of service for a period of time. In reaching its conclusions, the trial court relied upon the unbiased testimony of Tucker, the Peterbilt service manager, who opined that the used pump caused the damage to Bar T's truck.
Our review of the record reveals no manifest error in the trial court's conclusions. Since it was not clearly wrong, we affirm the trial court judgment dismissing the plaintiff's claims and awarding damages in favor of the defendant on its reconventional demand.

CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellant.
AFFIRMED.
NOTES
[1] Although Bayou's bill stated $325.00, the check issued by Bar T was for $350.00.
[2] Deaton testified that "R & R" signified that the fuel pump was removed and reinstalled.